523 So.2d 1305 (1988)
STATE of Louisiana
v.
Edward MUSSALL.
No. 87-K-2535.
Supreme Court of Louisiana.
April 11, 1988.
*1306 William J. Guste, Jr., Atty. Gen., Harry F. Connick, Dist. Atty., Terry M. Boudreaux, Brian T. Treacy, Asst. Dist. Attys., for applicant.
Dwight Doskey, Orleans Indigent Defender Program, for respondent.
DENNIS, Justice.
We granted certiorari in this armed robbery case to consider the state's claim that the court of appeal did not apply the appropriate Jackson v. Virginia methodology in reversing the defendant's conviction but instead directly assessed the credibility of the witnesses and substituted its finding of a reasonable doubt for that of a rational trier of fact. State v. Mussall, 514 So.2d 505 (La.App. 4th Cir.1987). We affirm. Having considered all of the evidence from the perspective of a rational trier of fact who interprets that evidence as favorably to the prosecution as any rational fact finder can, we conclude that no rational trier of fact could have found the defendant guilty beyond a reasonable doubt.

FACTS
Defendant, Edward Mussall, was convicted after a bench trial of armed robbery, La.R.S. 14:64, and sentenced to serve seven years at hard labor and to pay court costs of $74 or serve 30 days in jail. Defendant appealed to the court of appeal, which reversed his conviction and sentence as being constitutionally infirm due to insufficiency of evidence and ordered him discharged. State v. Mussall, supra.
Ray Siebenkittel, a 27 year old bellman at the Marie Antoinette Hotel, testified that he received a phone call at work from the defendant, Edward Mussall, in January of 1983. Siebenkittel said that he was surprised to hear from Mussall whom he had met but once briefly in 1979 as they waited at an air terminal to go to separate off shore jobs. He was at a loss to say how Mussall located him, except that he believed that he had given Mussall his name four years earlier. According to Siebenkittel, Mussall tried to interest him in purchasing or investing in the purchase of a Lafitte skiff that a friend of Mussall's might be willing to sell cheaply. Siebenkittel said he at first refused but finally agreed to look at the boat after Mussall called a second and third time during the next three weeks. Although Siebenkittel said he had not seen the boat and did not know where it was located or who owned it, he testified that he liquidated his entire savings of $4,000, which he saved while working at minimum wage and living at home, and borrowed $2,000 from his sister at 18½% interest. With the $6,000 cash in an envelope, he said, he drove 6 to 8 blocks to meet Mussall in the 700 block of Governor Nichols Street after he got off work at *1307 3:00 p.m. on February 25, 1983. Siebenkittel testified that as they walked along Governor Nichols Street at about 3:20 p.m. Mussall pulled a handgun and robbed him of the envelope containing $6,000.
Siebenkittel testified that he drove immediately to the First District Police Station and reported the crime about 10 to 12 minutes after it had occurred. He gave the police Mussall's name and description. Siebenkittel testified that before the robbery Mussall had given him his home telephone number and that he had reached the defendant at that number. Three weeks after the robbery, on March 17, 1983 a police officer showed Siebenkittel a photographic line up containing Mussall's picture, and Siebenkittel correctly identified one of the photos as being that of Mussall. A bulletin was issued for Mussall's arrest after this photo identification.
The state did not introduce any evidence to corroborate Siebenkittel's testimony as to the robbery. There was no other witness to the robbery itself or to any fact in Siebenkittel's version of his prior contact with Mussall. There was no corroboration of Siebenkittel's withdrawal or liquidation of $4,000 savings or of a $2,000 loan from his sister at 18½% interest. The state did not introduce the handgun, robbery loot, envelope or any evidence that Mussall had ever possessed any of them. There was no evidence to explain why Mussall had not been arrested immediately after the crime was reported instead of sometime after the photo-lineup, which occurred three weeks following the robbery.
Mussall took the stand in his own defense and testified that Siebenkittel had fabricated the armed robbery story out of revenge and to recover money that he believed Mussall had wrongfully taken from him. Mussall claimed that he, Siebenkittel, Jim W. Pace, Nicholas G. Felton, and Henry Canniglio, Jr., had pooled their money to finance the purchase and importation of a load of marijuana, in hopes of turning a large profit in the local market. The marijuana was never obtained however, and the money was lost. The other participants accused Mussall of bilking them and conspired in alternate means of retaliation. According to Mussall, Pace, Felton and Canniglio, Jr. fabricated a civil claim that Mussall had defaulted on a contract with them to sell shrimp and sought recovery of $45,000 for their investment in the venture. Mussall introduced a collection letter he had received from their attorney on this claim dated August 18, 1982. Mussall testified that Siebenkittel trumped up the armed robbery charge and filed a separate civil suit based thereon. Nevertheless, Mussall contended that both lawsuits were part of a conspiracy between Siebenkittel, Pace, Felton and Canniglio to seek retribution and recovery as a result of the abortive drug transaction. Mussall claimed that he was innocent of cheating his former marijuana partners but that he was a likely target for their wrath because he stood to recover a big judgment in a personal injury case.
In support of his testimony, Mussall introduced documentary evidence of the two lawsuits filed against him. Siebenkittel sued Mussall to recover $6,000 for the cash taken in the robbery and $100,000 in damages. Pace, Felton and Canniglio sued for $45,000 as contractual damage caused by Mussall's default. Both suits were filed on April 29, 1983 by the same New Orleans attorney, both petitions were verified in that attorney's office on that day by the respective plaintiffs, and both suits were served that same day on the defendant at central lockup where he was being held on the armed robbery charge.
In the state's rebuttal, Siebenkittel testified that he had never met Pace, Felton or Canniglio, that he was not aware that they had filed a lawsuit against Mussall on the same day as his or that they were using the same attorney. He denied any involvement in drug-related activity with them or Mussall. He admitted filing his lawsuit against Mussall but insisted that it was based on the armed robbery which actually happened. He admitted signing the pleadings in his attorney's office but denied seeing the plaintiffs in the other suit or being told anything about them. He testified that he picked the attorney for his suit out of the phone book and selected him because his office was near his own work place.

*1308 LEGAL PRECEPTS
This is a close case demanding an accurate, precise study of the appropriate legal precepts and the methods of their application. The armed robbery conviction is supported exclusively by the uncorroborated testimony of an eye witness. Unimpeached documentary evidence and several eccentricities in the victim's story tend to cast doubt on whether any robbery occurred. We are confronted with forceful conflicting arguments that a reviewing court must, on the one hand, give deference to the trier of fact's credibility call, and, on the other, reverse if no rational trier of fact would have found guilt beyond a reasonable doubt based upon the whole record. Accordingly, before applying the reasonable doubt or sufficiency of evidence standards, further study of their purpose and underlying principles is required.

REASONABLE DOUBT
The United States Supreme Court has explicitly held that the Due Process Clause of the Fourteenth Amendment protects each person accused of a crime against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged. In re Winship, 397 U.S. 358, 368, 90 S.Ct. 1068, 1075, 25 L.Ed.2d 368, 377-78 (1970). The ancient demand for a higher degree of persuasion in criminal proceedings and the virtually unanimous acceptance of the reasonable doubt standard reflect a profound judgment about the way in which law should be enforced and justice administered. In re Winship, supra, 397 U.S. at 361, 90 S.Ct. at 1071, 25 L.Ed.2d at 373-74; McCormick, On Evidence, § 341, at 962 (3rd ed. 1984); 9 J. Wigmore, Evidence, § 2497, at 317 (3rd ed. 1940); see Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968). The accused during a criminal prosecution has at stake interests of immense importance, both because of the possibility that he may lose his liberty upon conviction and because of the certainty that he would be stigmatized by the conviction. In re Winship, supra, 397 U.S. at 363, 90 S.Ct. at 1072, 25 L.Ed. at 375. The reasonable-doubt standard is a prime instrument for reducing the risk of a deprivation of his good name or freedom based on factual error, thus providing concrete substance to his presumption of innocence. To this end, the reasonable doubt standard is indispensable, for it places on the other party the burden of persuading the fact finder of the guilt of the accused beyond a reasonable doubt, and it impresses on the trier of fact the necessity of reaching a subjective state of certitude on the facts in issue, rather than merely performing an abstract weighing of the evidence in order to determine the quanta produced. In re Winship, supra, 397 U.S. at 364, 368, 90 S.Ct. at 1072, 1074, 25 L.Ed.2d at 375, 377; Dorsen & Rezneck, In re Gault and the Future of Juvenile Law, 1 Family Law Quarterly, No. 4, 1, 26-27 (1967). Moreover, use of the reasonable doubt standard is indispensable to command the respect and confidence of the community in applications of the criminal law, In re Winship, supra, 397 U.S. at 364, 90 S.Ct. at 1073, 25 L.Ed.2d at 375, and is bottomed on a fundamental value determination of our society that it is far worse to convict or stigmatize an innocent person than to let a guilty person go free. In re Winship, supra, 397 U.S. at 372, 90 S.Ct. at 1077, 25 L.Ed.2d at 380 (Harlan, J., concurring.)

SUFFICIENCY OF EVIDENCE
In Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the Supreme Court granted certiorari to consider the petitioner's claim that under In re Winship, supra, a federal habeas corpus court must consider not whether there was any evidence to support a state-court conviction, but whether there was sufficient evidence to justify a rational trier of the facts to find guilt beyond a reasonable doubt. In deciding the question, the high court held that Fourteenth Amendment Due Process requires a federal court reviewing a state conviction to do more than determine whether the reasonable doubt instruction had been given at trial and whether there was any evidence to support the conviction. Additionally, Due Process requires the reviewing court to determine "whether, after *1309 viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, supra, 443 U.S. at 319, 99 S.Ct. at 2789, 61 L.Ed.2d at 573.
Shortly after Jackson v. Virginia was decided, this court, in opinions by Justice Tate, recognized that although the issue arose in terms of federal habeas review, the Jackson holding also applies to state direct review of criminal convictions, and began to apply it in state criminal appeals. State v. Abercrombie, 375 So.2d 1170, 1177-1178 (La.1979), cert. denied, Abercrombie v. Louisiana, 446 U.S. 935, 100 S.Ct. 2151, 64 L.Ed.2d 787 (1980); State v. Mathews, 375 So.2d 1165, 1167-1169 (La. 1979). Despite a few erroneous but ineffectual statements to the contrary, e.g., State v. Main Motors, Inc., 383 So.2d 327, 328 (La.1979), the Jackson doctrine has in fact been applied by this court ever since. State v. Rosiere, 488 So.2d 965, 968 (La. 1986); State v. Captville, 448 So.2d 676, 678 (La.1984); State v. Allen, 440 So.2d 1330, 1333 (La.1983); State v. Dykes, 440 So.2d 88, 93 (La.1983); State v. Sutton, 436 So.2d 471, 474-475 (La.1983); State v. Chism, 436 So.2d 464, 466 (La.1983); State v. Johnson, 426 So.2d 95, 101 (La.1983) (citing cases); State v. Richardson, 425 So.2d 1228, 1230-1231 (La.1983); State v. Graham, 422 So.2d 123, 129 (La.1982), appeal dismissed, Graham v. Louisiana, 461 U.S. 950, 103 S.Ct. 2419, 77 L.Ed.2d 1309 (1983); State v. Ennis, 414 So.2d 661, 663 (La.1982); State v. Moody, 393 So.2d 1212, 1215 (La.1981); State v. White, 389 So.2d 1300, 1301 (La.1980); State v. Morgan, 389 So.2d 364, 366 (La.1980); State v. Harveston, 389 So.2d 63, 64 (La.1980); State v. Hartman, 388 So.2d 688, 694 (La.1980); State v. Byrd, 385 So.2d 248, 250 (La.1980); State v. Landry, 381 So.2d 462, 466 (La. 1980).
Moreover, the constitution and laws of Louisiana afford bases for an equally rigorous state standard of review. The Legislature has embraced the federal Due Process doctrine by adding La.C.Cr.P. art. 821 through Act No. 144 of 1982, which establishes a Jackson-like standard for post verdict motions for acquittal based on insufficiency of evidence. See State v. Captville, supra, 448 So.2d at 678. Our state constitution's due process clause is virtually identical to its Fourteenth Amendment model. La. Const., Art. I, § 2. The explicit right of a person accused of a crime to be presumed innocent until proven guilty provides an additional guarantee against criminal conviction based on inadequate evidence. La. Const., Art. I, § 16. The guarantee that no person shall suffer "imprisonment or forfeiture of rights or property ... without the right of judicial review based upon a complete record of all evidence upon which the judgment is based" indicates that a reviewing court must base its decision upon all of the evidence. La. Const., Art. I, § 19.
The Jackson v. Virginia doctrine involves more than simply applying a fixed standard to measure the simple quantum of the evidence produced in a case. Careful study must be given to both the majority and concurring opinions to fully understand the precise methodology which must be followed to determine objectively whether any rational trier of fact would have had a subjective doubt about the defendant's guilt. First, a review of a criminal conviction record for sufficiency of evidence does not require a court to "`ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt'"[1] Second, a reviewing court must consider the record through the eyes of a hypothetical rational trier of fact who interprets all of the evidence as favorably to the prosecution as any rational fact finder can.[2] Third, the inquiry requires the reviewing court to ask whether such a hypothetical rational trier of fact interpreting all of the evidence in this manner could have found *1310 the essential elements of the crime beyond a reasonable doubt.[3]
The principal criterion of a Jackson v. Virginia review is rationality. This is because under Winship and Jackson Fourteenth Amendment due process demands that in state trials, as has been demanded traditionally in federal trials, a criminal conviction cannot constitutionally stand if it is based on a record from which no rational trier of fact could find guilt beyond a reasonable doubt.[4] Accordingly, under the Jackson methodology a reviewing court is required to view the evidence from the perspective of a hypothetical rational trier of fact in determining whether such an unconstitutional conviction has occurred. In reviewing the evidence, the whole record must be considered because a rational trier of fact would consider all of the evidence, and the actual trier of fact is presumed to have acted rationally until it appears otherwise.[5] If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier's view of all of the evidence most favorable to the prosecution must be adopted. Thus, irrational decisions to convict will be overturned, rational decisions to convict will be upheld, and the actual fact finder's discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law.[6]
The Jackson doctrine or methodology is a compromise between the one extreme that maximizes the protection against the risk that innocent persons will be erroneously convicted by appellate replication of criminal trials and the other extreme that places the greatest faith in the ability of the triers of facts to produce just verdicts.[7] Not only did the Supreme Court abjure any requirement that a reviewing court retry the issue of guilt, but it also rejected all forms of limited review under which a partial or one-dimensional view of the evidence is accepted as an index of its actual probative value. The Jackson doctrine does not permit the reviewing court to view just the evidence most favorable to the prosecution and then to decide whether that evidence convinced it beyond a reasonable doubt.[8] Nor does it require a court to decide whether, based on the entire record, the average rational trier of fact could be convinced of guilt beyond a reasonable doubt.[9] And of course, the high court abrogated the "no evidence" rule of Thompson v. Louisville, 362 U.S. 199, 80 S.Ct. 624, 4 L.Ed.2d 654 (1960) because "it could not seriously be argued that ... a modicum of evidence could by itself rationally support a conviction beyond a reasonable doubt."[10]
The Supreme Court's opinion in Jackson v. Virginia contains various formulations of the sufficiency of evidence rule.[11] The court also appears to equate that rule with *1311 the federal motion for acquittal and direct-review rules.[12] The leading federal practice commentators have taken the position that despite the verbal variations each formulation requires the same analysis.[13]

CONCLUSIONS AS TO LEGAL PRECEPTS
After reviewing Jackson and the foregoing authorities, we conclude that a reviewing court may not disregard its duty under due process of law as interpreted by Jackson v. Virginia simply because the record contains testimony which tends to support each fact necessary to constitute the crime. If the court finds that no rational trier of fact viewing all of the evidence from a rational pro-prosecution standpoint could have found guilt beyond a reasonable doubt, the conviction cannot stand constitutionally. The actual trier of fact's rational credibility calls, evidence weighing and inference drawing are preserved through the requirement that upon judicial review all of the evidence is to be considered as if by a rational fact finder in the light most favorable to the prosecution,[14] and by the admonition that the sufficiency inquiry does not require a court to ask itself whether it believes that the evidence at trial established guilt beyond a reasonable doubt.[15] Thus, the reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence.[16] As Professor Wright observes, the important points are that "the court is not to substitute its judgment of what the verdict should be for that of the jury, but that at the same time the jury cannot be permitted to speculate if the evidence is such that reasonable jurors must have a reasonable doubt." 2 C. Wright, supra, § 467, at 660-661 & n. 23.

APPLYING THE PRECEPTS
Applying these precepts to the present case, we conclude that any rational trier of fact, after viewing all of the evidence as favorably to the prosecution as a rational fact finder can, necessarily must have a reasonable doubt as to the defendant's guilt. Eye witness testimony alone is usually sufficient in the mill run of cases, but in this particular case even a reasonably pro-prosecution rational trier of fact is driven to have a reasonable doubt by the numerous eccentricities, unusual coincidences and lack of corroboration. The striking coincidences between Siebenkittel's lawsuit and that of the shrimp contract plaintiffsincluding the identities of the lawyer, law office, defendant, date of affidavit, filing and servicecontributes substantially toward a reasonable doubt in any rational fact finder's mind. The lack of any corroboration of a daylight armed robbery *1312 on a French Quarter sidewalk despite a complete and accurate identification by name of the robber given to the police within 10 to 12 minutes of the crime is apt to cause more furrows in any rational fact finder's brow. With the addition of the eccentricities of Siebenkittel's story, any rational trier of fact must take a dim view of the state's case even in its most favorable light: a frugal young man who saves a nest egg on minimum wage, responds to a call out of the blue from a virtual stranger about a boat owned by the caller's friend by liquidating his $4,000 savings, borrowing $2,000 more from his sister at 18½%, and rushing off to meet the caller with $6,000 cash in his pocket, without first inspecting the boat or talking to the owner of the boat about price; and an armed robber who calls in advance of the crime to renew acquaintances with his victim, uses his correct name and leaves his home phone number so that he cannot fail to be identified. The absence of any corroboration of the existence of Siebenkittel's $4,000 savings prior to the robbery or of the $2,000 loan from his sister at 18½%, facts which the state could easily have supported with evidence, further contributes to the creation of a reasonable doubt in the mind of any rational trier of fact.

CONCLUSION
In summary, we conclude that, after viewing the evidence in the light most favorable to the prosecution, no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This decision, of course, is concerned only with whether the defendant was convicted of armed robbery upon inadequate evidence and has nothing to do with his credibility or whether he may be guilty of some other offense. As the Supreme Court in Jackson observed, "[t]he constitutional necessity of proof beyond a reasonable doubt is not confined to those defendants who are morally blameless. * * * Under our system of criminal justice even a thief is entitled to complain that he has been unconstitutionally convicted and imprisoned as a burglar." Jackson v. Virginia, supra, 443 U.S. at 323-324, 99 S.Ct. at 2791, 61 L.Ed.2d at 576.

DECREE
For the reasons assigned the judgment of the court of appeal is affirmed.
AFFIRMED.
NOTES
[1] Jackson v. Virginia, supra, 443 U.S. at 319, 99 S.Ct. at 2789, 61 L.Ed.2d at 573.
[2] Id.; Jackson v. Virginia, supra, 443 U.S. at 337, 99 S.Ct. at 2798, 61 L.Ed.2d at 585 (Stevens, J., concurring).
[3] Jackson v. Virginia, supra, 443 U.S. at 319, 99 S.Ct. at 2789, 61 L.Ed.2d at 573.
[4] Jackson v. Virginia, supra, 443 U.S. at 317, 99 S.Ct. at 2288, 61 L.Ed.2d at 572 (citing Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1941); Bronston v. United States, 409 U.S. 352, 93 S.Ct. 595, 34 L.Ed.2d 568 (1973); Curley v. United States, 160 F.2d 229, 232-233 (D.C.Cir.), cert. den., 331 U.S. 837, 67 S.Ct. 1511, 91 L.Ed. 1850 (1947)). See also, United Brotherhood of Carpenters & Joiners v. United States, 330 U.S. 395, 408, 67 S.Ct. 775, 782, 91 L.Ed. 973, 985 (1946). Cf. Capital Traction Co. v. Hof, 174 U.S. 1, 13-14, 19 S.Ct. 580, 585-586, 43 L.Ed. 873, 877-878 (1898).
[5] See Jackson v. Virginia, supra, 443 U.S. at 337, 99 S.Ct. at 2798, 61 L.Ed.2d at 585 (Stevens, J., concurring).
[6] Jackson v. Virginia, supra, 443 U.S. at 319, 99 S.Ct. 2789, 61 L.Ed.2d at 573-574.
[7] Cf. Jackson v. Virginia, supra, 443 U.S. at 335, 99 S.Ct. at 2797, 61 L.Ed.2d at 584 (Stevens, J., concurring).
[8] Jackson v. Virginia, supra, 443 U.S. at 334, 99 S.Ct. at 2797, 61 L.Ed.2d at 583 (Stevens, J., concurring).
[9] Id.
[10] Jackson v. Virginia, supra, 443 U.S. at 320, 99 S.Ct. at 2789, 61 L.Ed.2d at 574.
[11] E.g., the test is stated as "no rational trier of fact could find guilt beyond a reasonable doubt"; and as "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, supra, 443 U.S. at 317, 319, 99 S.Ct. at 2788, 2789, 61 L.Ed.2d at 572, 573.
[12] Jackson v. Virginia, supra, 443 U.S. at 318 & n. 11, 99 S.Ct. at 2789 & n. 11, 61 L.Ed.2d at 573 & n. 11 (citing Curley v. United States, supra). In Curley, Judge Prettyman states, in relation to the standard to be applied on a motion for a judgment of acquittal:

If the evidence is such that reasonable jurymen must necessarily have such a doubt, the judge must require acquittal, because no other result is permissible within the fixed bounds of jury consideration. But if a reasonable mind might fairly have a reasonable doubt or might fairly not have one, the case is for the jury, and the decision is for the jurors to make. * * *
The true rule, therefore, is that a trial judge, in passing upon a motion for directed verdict of acquittal, must determine whether upon the evidence, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt. If he concludes that upon the evidence there must be such a doubt in a reasonable mind, he must grant the motion; or, to state it another way, if there is no evidence upon which a reasonable mind might fairly conclude guilty beyond a reasonable doubt, the motion must be granted. If he concludes that either of the two results, a reasonable doubt or no reasonable doubt is fairly possible, he must let the jury decide the matter. Curley v. United States, supra, 160 F.2d at 232-233.
[13] 8 A. Moore, Moore's Federal Practice, § 29.06 (2d ed. 1987); 2 C. Wright, Federal Practice & Procedure, Criminal 2d, § 467, at 655-656 (2d ed. 1982).
[14] Jackson v. Virginia, supra, 443 U.S. at 319, 99 S.Ct. 2789, 61 L.Ed.2d at 573.
[15] Id.
[16] State v. Rosiere, supra.