GUIDRY, Judge.
Defendant was charged by bill of information with theft of over $500.00, a violation of La.R.S. 14:67. She was convicted by a six person jury of attempted theft of property having a value of $100.00 or more, a violation of La.R.S. 14:67 and 14:27. On March 21, 1989, defendant was sentenced to pay a fine of $200.00, court costs of $80.00 plus a victim reparation fee of $7.50 and in default thereof to serve sixty days in the parish jail. The trial court further sentenced the defendant to serve four months in the parish jail.
FACTS
The State called three witnesses: Marlene Graham, Vice President of Central Louisiana Bank (Cenia); Nelson Miller, the complainant; and, Robert E. Venable, detective and deputy sheriff for the Parish of Avoyelles.
Ms. Graham, pursuant to a subpoena duces tecum, produced microfilm copies of the various checks which allegedly support the offense of attempted theft. Det. Vena-ble was to testify concerning supposed in-culpatory statements made by the defendant to him when he interviewed her and Miller on July 7, 1988. However, after testifying before the court out of the presence of the jury, and upon objection by the defense, the prosecuting attorney elected not to offer Det. Venable’s testimony.
The State’s entire case against the defendant relies almost exclusively on the testimony of Nelson Miller. According to Miller, he and defendant, although unmarried, lived together from December 1986 or January 1987 to approximately May of 1988. During this period, Miller maintained a checking account with Cenia. The account was in his name only and defendant was never authorized to sign any checks on this *741 account. Further, Miller testified that his work would sometimes make it necessary that he be away from home for a week or two. On those occasions it was his practice to leave with defendant one or two pre-signed checks so defendant could purchase groceries or pay for other necessaries for herself and Miller’s son, who also lived with them. Miller also testified that he may have instructed the defendant to provide him with a receipt whenever she utilized one of the pre-signed checks. Either Miller or the defendant would record the amount of the check or of the receipt, if one was provided, in the cheeking account stub ledger.
Defendant and Miller ceased their cohabitation and their relationship during May of 1988. Miller admitted in his testimony that defendant initiated the termination of their relationship. After their relationship ended, specifically on July 7, 1988, Miller brought charges of theft against defendant. The bill of information charged defendant with violating La.R.S. 14:67 in that she “... did take in excess of $500.00 cash money belonging to Nelson Miller, by means of fraudulent conduct, practices, and representations, and with the intent to deprive him of the money permanently”.
Specifically, defendant was accused of either cashing some nineteen checks pre-signed by Miller for amounts over the purchase amount of items purchased, or for making out the pre-signed checks to herself and then cashing them. Defendant was not accused of forging Miller’s signature. Every check involved was signed by Miller and freely given to defendant. Rather, Miller alleged, and the State charged, that defendant, without the authorization of Miller, either made the checks out to herself or made the checks out for amounts beyond the purchase price of items purchased as denoted by the amounts that were entered on the check stub ledger.
Defendant’s appeal rests on the following four assignments of error:
1.The trial court erred in finding attempted theft over $100.00. The verdict was contrary to the law and evidence.
2. The trial court erred in giving an illegal sentence and then amending its sentence to an excessive one.
3. The trial court erred in overruling an objection in closing argument by the district attorney in going beyond the scope of rebuttal.
4. The trial court erred in overruling defense objections and motion for mistrial on the prosecution’s commenting to the jury about the defendant not testifying.
Inasmuch as we find merit in appellant’s assignment of error number one, we need not consider the remaining three assignments.
ASSIGNMENT OF ERROR NO. 1
Defendant claims that the trial court erred in finding her guilty of attempted theft over $100.00, as the verdict was contrary to the law and the evidence. We agree.
In examining whether the evidence introduced at trial is sufficient to meet the reasonable doubt standard, the Louisiana jurisprudence has consistently followed the test set forth in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), which is “whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact would have found the essential elements of the crime beyond a reasonable doubt”. In State v. Mussall, 523 So.2d 1305, 1309 (La.1988), the Louisiana Supreme Court further explained the steps involved in applying the Jackson standard. There, the court stated:
"First, a review of a criminal conviction record for sufficiency of evidence does not require a court to ‘ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.’ Second, a reviewing court must consider the record through the eyes of a hypothetical rational trier of fact who interprets all of the evidence as favorably to the prosecution as a rational fact finder can. Third, the inquiry requires the reviewing court to ask whether such a hypothetical rational trier of fact interpreting all of the evidence in this manner *742 could have found the essential elements of the crime beyond a reasonable doubt.”
The court in Mussall, supra, at page 1310, expatiates on the point that the key to this standard of review is rationality:
“The principal criterion of a Jackson v. Virginia review is rationality. This is because under Winship[1] and Jackson, Fourteenth Amendment due process demands that in state trials, as has been demanded traditionally in federal trials, a criminal conviction cannot constitutionally stand if it is based on a record from which no rational trier of fact could find guilt beyond a reasonable doubt. Accordingly, under the Jackson methodology a reviewing court is required to view the evidence from the perspective of a hypothetical rational trier of fact in determining whether such an unconstitutional conviction has occurred. In reviewing the evidence, the whole record must be considered because a rational trier of fact would consider all of the evidence, and the actual trier of fact is presumed to have acted rationally until it appears otherwise. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier’s view of all of the evidence most favorable to the prosecution must be adopted. Thus, irrational decisions to convict will be overturned, rational decisions to convict will be upheld, and the actual fact finder’s discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law.”
The court in Mussall concluded that the Jackson doctrine of methodology rejects “... all forms of limited review under which a partial or one-dimensional view of the evidence is accepted as an index of its actual probative value”. The Mussall court further found that the “Jackson doctrine does not permit the reviewing court to view just the evidence most favorable to the prosecution and then to decide whether that evidence convinced it beyond a reasonable doubt”. For further discussion of Mussall, see recent Third Circuit cases, State v. Moya, 539 So.2d 756 (La.App. 3rd Cir.1989) and State v. Dupre, 537 So.2d 1200 (La.App. 3rd Cir.1989), writ denied, 541 So.2d 891 (La.1989).
To convict the defendant of attempted theft of property having a value of $100.00 or more, the State was required to prove beyond a reasonable doubt that the defendant’s actions met the elements in the following statutes:
“Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.” La.R.S. 14:27 A.
“Theft is the misappropriation or taking of anything of value which belongs to another, either without the consent of the other to the misappropriation or taking, or by means of fraudulent conduct, practices, or representations. An intent to deprive the other permanently of whatever may be the subject of the misappropriation or taking is essential.” La.R.S. 14:67
In the case sub judice, we find that all of the elements of attempted theft were not proven. Interpreting all of the evidence as favorably to the prosecution as a rational trier of fact can, but not viewing just the evidence most favorable to the prosecution, there can be no doubt, according to the testimony of Miller, that defendant made out some pre-signed checks to herself, and that on other occasions she entered check amounts exceeding the amounts of the purchases she had made.
However, using the Jackson and Mussall standards, it was not established that defendant had the specific intent to take or misappropriate without the consent of Miller, or that defendant had the intent to permanently deprive Miller of that which she is supposed to have attempted to take or misappropriate. Miller’s testimony, which was the only testimony admitted on these issues, is equivocal at best.
*743 Although Miller obviously felt that defendant took advantage of him, he admitted, both in reference to specific checks and in reference to all of the checks in question, that he never told the defendant that she could not make out the checks either to herself or for amounts greater than the purchase amount on the receipts. Miller admitted that he did not know if he had given defendant instructions as to how the checks were to be used. On direct examination, Miller stated:
“Q. Did you ever give her any instructions when you gave her the checks? You said you would sign the checks and they were in blank, OK? You would give them to her. Did you give her any kind of instructions on what she was to do with the check, whenever you’d give them to her?
A. I don’t know specifically if I did. What I did was give her a check, and then, like groceries or whatever, come back, get the receipt to fill them out, you know, who it was made out to.”
Additionally, under cross-examination, Miller testified as follows:
“Q. Isn’t it true that when you gave Brenda a blank check, you didn’t say, you go to this store and spend exactly this amount?
A. No.
Q. Isn’t it true that y’all almost had like a marriage relationship, isn’t that correct?
A. Yes sir.
Q. And if she’d say, we need to go to Wal-Mart, you’d say, OK, here’s a check. Or we need some cleaning things; we need to go to the grocery store, or wherever. Wouldn’t it be fair to say that you’d say, OK, here’s a check?
A. Right.
Q. You didn’t say, make it out to a specific company for a specific amount?
A. No.
Q. And you didn’t tell her that she could not make the check out to herself, and then use the cash to buy the goods? You didn’t specifically tell her not to do that, did you?
A. No.
Q. OK. And wouldn’t it be fair to say that you don’t know what, if anything, of the checks made out to Brenda, if they were not used for household items, neither?
A. I don’t understand the question.
Q. What I'm saying is, you didn’t — you just said, and correct me if I'm wrong, that you didn’t say that she could not write the check out to herself and go spend the money on the groceries. That’s what you just said, right?
A. Right.
Q. Ok, and you don’t know whether or not that was done, do you?
A. No.”
Thus, Miller could not testify that he instructed the defendant not to make a check out to herself or for an amount greater than the purchase price. Furthermore, Miller testified he could not assert that defendant actualy derived any money from utilizing the checks in the manner that she did. He admitted that as far as he knew defendant may have spent all the money derived from the checks on household expenses.
Miller on redirect examination did testify that he did not expect defendant to utilize the checks the way she did, and that she did so without specific authority, but again on cross-examination, Miller admitted he did not know if defendant retained any of the funds for her own use, or if she instead spent them in running the home.
Defendant may indeed have taken advantage of Miller. The legal issue, however, is whether the State met its burden of proof beyond a reasonable doubt that defendant attempted to take or misappropriate Miller’s money without his consent with the intent to permanently deprive him of that money. It is clear that the State did not meet its burden of proving these elements of the alleged crime.
It is noteworthy that Miller did not prefer charges against the defendant until after she left him, although the alleged thievery, or attempted thievery, had been going on for over a year. It should also be pointed out that defendant and Miller, by Miller’s own admission, lived together in *744 what was very much like a husband-wife relationship. Defendant took care of the house, did the grocery shopping — generally assumed the duties of a non-working wife — and Miller gave her money or checks that he had pre-signed to do the shopping. In fact, he stated that he gave her other money and made out many other checks besides the ones in question here.
Viewing the evidence in a light most favorable to the prosecution, we find that a rational trier of fact could not find every essential element of the crime proven beyond a reasonable doubt or that every reasonable hypothesis of innocence had been excluded.
Accordingly, for the reasons stated, the defendant’s conviction and the sentence imposed are reversed and it is ordered that she be discharged.
REVERSED AND RENDERED.
DOMENGEAUX, C.J., dissents and assigns reason.

. In Re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).