WALTZER, Judge.
By indictment dated October 13, 1988, Mark Isaac was charged with second degree murder. R.S. 14:30.1 On October 20, 1988, a sanity commission concluded that defendant was incompetent to stand trial or assist in his defense. Following a lunacy hearing on September 11, 1990, defendant was found competent to proceed to trial. On May 8, 1991, defendant withdrew his plea of not guilty by reason of insanity and entered a plea of not guilty. The defendant was convicted of second degree murder. The trial court sentenced the defendant to serve the remainder of his life at hard labor in the custody of the Department of Corrections, without benefit of parole.
STATEMENT OF THE FACTS
Elton Williams was killed on May 31, 1988, when a bullet fired from more than three feet away entered on a downward path from above his left ear, lodging inside his head, near his right temple. The autopsy physician Dr. Paul McGary testified that based on the trajectory of the bullet, the victim was probably not standing when shot.
The victim’s brother Kevin Williams testified he witnessed the shooting. He testified his brother asked him for bus fare and was walking between two buildings in the *166 Desire Housing Project, when he passed near the defendant, who was leaning against the wall of one of the buildings. As the victim walked past the defendant, the victim began running and defendant chased him. Kevin Williams saw the defendant pull a .38 caliber pistol from the front of his pants pocket and fire three shots, the last of which struck the victim in his head as he was falling to the ground. Kevin Williams testified that he was not aware of a previous fight between the defendant and the victim, nor was he aware that the victim was selling drugs. He testified he got a clear look at the defendant. He had known the defendant for many years.
The victim’s sister Elaine Williams testified that fifteen minutes after the victim left her apartment, she heard gunshots and heard the victim’s voice. When she looked out of the window, she saw the defendant shoot her brother as he was “going down.” She yelled to the defendant who looked up at her and she said, “I saw you, Mark!” The defendant then ran.
First City Court Deputy Constable Gerald Elwood was performing an eviction when he saw two men arguing. Mr. Elwood turned to walk back into the apartment when he heard three gunshots. When he looked back outside, he saw one man running away through the courtyard, and the other man lying on his back. Mr. Elwood was unable to make an identification of the defendant.
In his trial testimony, the defendant denied committing this offense or being present in the courtyard of the Desire Housing Project the morning of May 31, 1988. The defendant admitted that he knew one Denise Rothschild, but testified they were only friends and were not dating.
The state called Denise Rothschild as a rebuttal witness. She testified that on May 31, 1988 she was fifteen years old and had been dating the defendant for more than one year. She further testified the defendant told her that he had shot someone but that the person had first pulled a knife on him. He told her that this person said that he would “beat up” the defendant. According to Ms. Rothschild, the defendant said that he pulled out a gun, causing the victim to run. He chased the victim into the courtyard where he shot him in his ear as the victim fell to the ground.
ASSIGNMENT OF ERROR
The defendant raises only one assignment of error. He contends that the evidence introduced by the state was insufficient to prove every essential element of the crime of second degree murder beyond a reasonable doubt.
In evaluating the sufficiency of evidence to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, reh. den. 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); State v. Green, 588 So.2d 757 (La.App. 4th Cir.1991). Nevertheless, the reviewing court may not disregard its duty to consider whether the evidence is constitutionally sufficient simply because the record contains evidence that tends to support each fact necessary to constitute the crime. State v. Mussall, 523 So.2d 1305 (La.1988). The reviewing court is not permitted to consider just the evidence most favorable to the prosecution, but must consider the record as a whole as a rational trier of fact would do. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier’s view of all the evidence most favorable to the prosecution must be adopted. The fact finder’s discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. Mussall; Green.
Defendant was charged with and convicted of second degree murder. R.S. 14:30.1 defines second degree murder as:
“The killing of a human being ... (w)hen the offender has a specific intent to kill or to inflict great bodily harm.”
The defendant contends the evidence supported a finding of manslaughter.
*167 R.S. 14:31 defines manslaughter in part as:
“(1) A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender’s blood had actually cooled, or that an average person’s blood would have cooled, at the time the offense was committed.”
We have carefully read the record and evaluated the sufficiency of the evidence. Jackson v. Virginia, supra. The prosecution proved beyond a reasonable doubt that the defendant committed the crime of second degree murder.
Two eyewitnesses to the shooting testified that the defendant shot the victim as he was falling to the ground when he was attempting to flee. Both witnesses stated that they did not hear an argument between the defendant and the victim. The autopsy revealed that the fatal bullet was fired from above the victim’s head indicating that the victim was either falling to the ground or already on the ground when the shot was fired. Although one witness testified that he heard an argument between two men seconds before the shooting, there was no evidence that the victim was actively threatening the defendant when the shot was fired. And, although another witness testified that the defendant told her that the victim had pulled a knife, no knife was found on the victim or near the body. Given the evidence, the jury did not err in concluding that the defendant did not act in “heat of blood” or “sudden passion” when he shot the victim.
For the reasons discussed, the defendant’s conviction and sentence are affirmed.
AFFIRMED.