# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 06-1115

STATE OF LOUISIANA

VERSUS

JAKE C. DESOTO

\*\*\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
TWELFTH JUDICIAL DISTRICT COURT
PARISH OF AVOYELLES, NO. 127704
HONORABLE FRANK FOIL, DISTRICT JUDGE AD HOC

\*\*\*\*\*\*\*\*\*\*\*\*
## ON REHEARING

## ULYSSES GENE THIBODEAUX
## CHIEF JUDGE

\*\*\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Sylvia R. Cooks, and Elizabeth A. Pickett, Judges.

**COOKS, J., CONCURS AND ASSIGNS WRITTEN REASONS.**

**PICKETT, J., DISSENTS AND ASSIGNS WRITTEN REASONS.**

> **CONVICTION REVERSED; SENTENCE VACATED; JUDGMENT OF ACQUITTAL ENTERED.**

**David Edwin Lafargue**
**Lafargue Law Office**
**P. O. Box 277**
**Marksville, LA 71351**
**Telephone: (318) 253-7521**
**COUNSEL FOR:**
    **Defendant/Appellant - Jake C. DeSoto**

**Charles A. Riddle, III**
**District Attorney - 12th Judicial District Court**
**P. O. Box 1200**
**Marksville, LA 71351**
**Telephone: (318) 253-6587**
**COUNSEL FOR:**
    **Plaintiff/Appellee - State of Louisiana**

**Norris Joseph Greenhouse**
**Assistant District Attorney - 12th Judicial District Court**
**214 Main Street**
**Marksville, LA 71351**
**Telephone: (318) 253-6394**
**COUNSEL FOR:**
    **Plaintiff/Appellee - State of Louisiana**

**THIBODEAUX, Chief Judge.**

We granted rehearing to consider the propriety of our original opinion and conclusion therein. We now reverse and set aside the conviction and sentence of the Defendant, Jake C. DeSoto. The evidence adduced at trial does not support a finding of criminal negligence under La.R.S. 14:32 and La.R.S. 14:12.

As my dissent to the original opinion pointed out, the salient issue is whether the Defendant believed he shot at a deer. In *State in the Interest of S.T.*, 95,2187 (La.App. 1 Cir. 6/28/96), 677 So.2d 1071, the juvenile saw the high neck, rear end, and horns of a deer. He then fired. The area in which the juvenile fired was free from obstructions. The first circuit found there was no evidence of criminal negligence. The Defendant in this case stated that he saw the white on the neck or underneath the deer and fired his gun. He fired when it was dark into an area that may have had weed cover. Based on *S.T.*, the only question to be asked is whether the Defendant believed he saw a deer. The Defendant informed Detective Schaub that Roy alerted him that a deer was in the area. Additionally, he told Detective Schaub that he shot at a deer. There is no testimony to contradict the Defendant's statements that he believed he shot at a deer or what he thought was a deer. Based on those comments, there is no evidence of criminal negligence in this case just as there was no evidence of criminal negligence in *S.T.*

The State compares the factual circumstances of this case to *State v. Parker*, 431 So.2d 114 (La.App. 1 Cir.), *writ denied*, 435 So.2d 433 (La.1983), and asserts that the Defendant herein knew Roy was hunting in front of him. First, because the Defendant did not see Roy enter the field, there is nothing to prove the Defendant knew Roy was hunting in front of him. Additionally, *Parker* is distinguishable in that the defendant therein intentionally shot at a person, through a door, without knowing who the person was.

The fact that the Defendant left his stand and moved to a point thirty-four yards from the Eiffel Tower did not amount to criminal negligence, as Lee Clay testified that a person could safely shoot from the area where the shell casing was found to the area where Roy was found without hitting anyone in the Eiffel Tower. Additionally, answering a cell phone minutes before the shooting would not constitute criminal negligence. Furthermore, even if the Defendant was negligent in failing to see that Roy was in the area, it would not amount to a "gross" deviation below the standard of care to shoot when there was no evidence that he knew Roy had left the Eiffel Tower or that he saw Roy when he fired the gun. We note that Dr. Mayeux testified that Roy's neck was parallel to the ground when he was shot.

## CONCLUSION

For the foregoing reasons, we conclude our original conclusion of the Defendant's culpability was erroneous. We, therefore, reverse the conviction of the Defendant, vacate and set aside his sentence, and order the entry of a judgment of acquittal.

**CONVICTION REVERSED; SENTENCE VACATED; JUDGMENT OF ACQUITTAL ENTERED.**

STATE OF LOUISIANA

VERSUS

JAKE C. DESOTO


PICKETT, J., dissenting.

For the reasons set forth in the original opinion and set forth herein, I respectfully dissent.

I disagree that the issue before us, as set forth in the majority opinion, is whether the defendant believed he shot at a deer. The issue that had to be determined by the *finder of fact*, the jury, was whether, considering *all the evidence before them*, "the offender's conduct amounts to a gross deviation below the standard of care expected to be maintained by a reasonably careful man under like circumstances." La.R.S. 14:12. The issue before *this court* is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found proof beyond a reasonable doubt of each of the essential elements of the crime charged. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781 (1979); *State v. Captville*, 448 So.2d 676 (La.1984). As set forth more fully in the original opinion, I find when reviewed under the *Jackson* standard, there is sufficient evidence to affirm the conviction.

As I previously noted the jury could have concluded, based on the evidence which is thoroughly reviewed in the original opinion, that the defendant shot without

1

clearly identifying his target. Further, the jury could have concluded, based on the defendant's statement, that the defendant actually saw Roy enter the field before firing his gun. Either, when viewing the evidence and circumstances as a whole, would have been a gross deviation below the standard of care expected of a reasonably careful person under like circumstances.

The Supreme Court has recently reminded us in *State v. Ware*, 06-1703, p. 8 (La. 6/29/07), ___ So.2d ___, ___, that

> a reviewing court may impinge on the trier of fact's discretion "only to the extent necessary to guarantee the fundamental due process of law." *State v. Mussall*, 523 So.2d 1305, 1311 (La.1988).

In *Ware*, the court of appeal reversed the defendant's conviction of attempted forcible rape. The Supreme Court reinstated the conviction, finding that "the court of appeal erred by substituting its appreciation of the evidence for that of the factfinder" and noted the appellate court "failed to accord due deference to the rational credibility choices made by the jury." *Ware*, ___ So.2d at ___.

In the matter before us, the majority has obviously substituted its appreciation of the evidence for that of the factfinder. The majority has "failed to accord due deference to the rational credibility choices made by the jury" which, as the Supreme Court points out in *Ware*, is improper. I note, for example, that the writing judge states as a fact that the defendant did not see Roy enter the field. There was, in fact, testimony from the defendant that could have caused the jury to conclude that the defendant did see Roy enter the field. This court's substitution of its conclusions regarding the evidence for the conclusions of the jury is exactly what the Supreme Court in *Ware* reminds us is prohibited.

2

In setting aside the conviction, the majority has totally ignored the standard set forth in *Jackson*, 443 U.S. 307, which clearly sets forth that:

> In evaluating the sufficiency of the evidence to support a conviction, a reviewing court must determine whether, viewing the evidence in the light ***most favorable to the prosecution***, any rational trier of fact could have found proof beyond a reasonable doubt of each of the essential elements of the crime charged.

*State v. Leger*, 05-11, p. 91 (La. 7/10/06), 936 So.2d 108, 170 (emphasis added).

STATE OF LOUISIANA

VERSUS

JAKE C. DESOTO

**COOKS, J., concurs.**

I concur in the majority opinion's result and write separately to specifically note the decedent in this case was not wearing any identifiable "hunting orange" clothing. The record is simply devoid of any evidence tending to show or even suggest that Defendant knew he was shooting at his friend or anything other than a deer. The State "hangs its hat" on the belief that Defendant may have been on his cell phone shortly before he fired the fatal shot and, thus, may have been distracted because he was conversing with his girlfriend. This apparently is the sum total of the State's evidence which it relies upon in asserting that it proved beyond a reasonable doubt that Defendant was guilty of criminal negligence. Even accepting this evidence as true and viewing it in the light most favorable to the prosecution, as required by *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, *rehearing denied*, 444 U.S. 890, 100 S.Ct. 195 (1979), it does not prove the essential elements of criminal negligence. La.R.S. 14:12 defines criminal negligence as follows:

> Criminal negligence exists when, although neither specific nor general criminal intent is present, there is such disregard of the interest of others that the offender's conduct amounts to a gross deviation below the standard of care expected to be maintained by a reasonably careful man under like circumstances.

The record did not indicate that Defendant consumed any alcoholic beverages or engaged in any horseplay. Moreover, the record established Defendant believed his friend was on the deer stand. The only opposition presented by the State to this

unrefuted testimony are the State's inferences on what may have "possibly" happened. The State, in arguing that Defendant's conduct amounted to a gross deviation below the standard of care expected from a reasonable hunter in similar circumstances, noted that it was getting dark and that a hunter clearly should not fire his gun when he is not absolutely sure what is in his sight. The fact that Defendant violated a rule of hunting does not necessarily equate to criminal negligence. The State's position that a hunter must always be certain what he sees in his sight before shooting would mean we could never have a hunting "accident," but simply *de facto* acts of criminal negligence. To the relief of many, including our esteemed vice president, this is not the intent of the statute. As Chief Judge Thibodeaux explains in the majority opinion, we have always attempted to discern the belief or intent of the Defendant at the time of the shooting. In this case, the State offered no evidence to indicate this Defendant believed or had reason to believe that his friend was the target.

I also express concern with the recusal issue that was originally presented on appeal. However, I decline to address this issue as I have joined in the majority opinion's reversal of Defendant's conviction.