STATE OF LOUISIANA,
v.
WILLIAM JAMES PANTER.
No. 2009 KA 1600.
Court of Appeals of Louisiana, First Circuit.
February 12, 2010.
Not Designated for Publication.
WALTER P. REED, District Attorney KATHRYN W. LANDRY, Counsel for Appellee, State of Louisiana.
BERTHA M. HILLMAN, Counsel for Defendant/Appellant, William James Panter.
Before: CARTER, C.J., GUIDRY and PETTIGREW, JJ.
CARTER, C.J.
The defendant, William James Panter, was charged with two counts of assault by drive-by shooting, in violation of La. R.S. 14:37.1. He entered a plea of not guilty to both charges. Following a trial by jury, the defendant was convicted as charged. He was sentenced to imprisonment at hard labor for five years on each count, to be served concurrently. The defendant now appeals. In two assignments of error, he claims the evidence presented is insufficient to support the convictions, and the sentences are excessive. Finding no merit in the assigned errors, we affirm the convictions and sentences.

FACTS
During the early morning hours of December 11, 2006, the defendant observed his girlfriend, Misty Swinford, riding as a passenger in a vehicle driven by Madison Former. The defendant drove his vehicle up close to Former's vehicle and demanded that Former stop. When Former failed to comply, the defendant fired multiple gunshots toward Former's vehicle. The defendant subsequently was arrested. During the police investigation, the defendant provided a tape-recorded statement wherein he admitted shooting at the vehicle.

SUFFICIENCY OF THE EVIDENCE
The defendant argues the evidence presented at the trial of this matter was insufficient to support the convictions. Specifically, the defendant contends the evidence failed to prove that he possessed specific intent to kill, cause harm, or frighten another individual.
A conviction based on insufficient evidence cannot stand as it violates due process. See U.S. Const, amend. XIV; La. Const, art. I, § 2. The standard of review for the sufficiency of the evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude that the state proved the essential elements of the crime and the defendant's identity as the perpetrator of that crime, beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Mussall, 523 So.2d 1305, 1308-1309 (La. 1988); see also La. Code Crim. P. art. 821. The Jackson standard of review incorporated in Article 821 is an objective standard for testing overall evidence, both direct and circumstantial, for reasonable doubt. State v. McLean, 525 So.2d 1251, 1255 (La. App. 1st Cir.), writ denied, 532 So.2d 130 (La. 1988). When analyzing circumstantial evidence, La. R.S. 15:438 provides that the fact finder must be satisfied that the overall evidence excludes every reasonable hypothesis of innocence. McLean, 525 So.2d at 1255.
Assault is defined as an attempt to commit a battery or the intentional placing of another in reasonable apprehension of receiving a battery. La. R.S. 14:36. Assault by drive-by shooting is "an assault committed with a firearm when an offender uses a motor vehicle to facilitate the assault." La. R.S. 14:37.1 A. The term "drive-by shooting" is defined as the discharge of a firearm from a motor vehicle on a public street or highway with the intent to kill, cause harm to, or frighten another person. La. R.S. 14:37.1C.
At the trial, Former testified that on the morning in question he was giving Misty Swinford a ride to her mother's house when he observed the headlights of another vehicle rapidly approaching from the rear. Shortly thereafter, when he stopped at a stop sign, the driver of the approaching vehicle (subsequently identified as the defendant) drove up to Former's vehicle. The defendant asked that Former stop the vehicle. The defendant then blocked Former's vehicle and walked toward it with a gun in his hand. Former testified that the defendant threatened to shoot if Former did not stop, but when Former saw the gun in the defendant's hand, Former "hit the gas." The defendant followed. According to Fortner, a high-speed chase ensued. As the chase continued, the defendant fired several shots from his vehicle into Fortner's vehicle. One of the bullets penetrated the vehicle's gas tank. The chase ended when the defendant lost sight of Fortner's vehicle as they raced through a nearby subdivision. Fortner testified that shortly after he lost the defendant, his vehicle, with a bullet-punctured gas tank, ran out of gas.
Fortner admitted to having a sexual relationship with Misty. He opined that his sexual relationship with Misty was the motive for the defendant's actions on the morning in question.
Misty testified on behalf of the state. She appeared in court clad in prison garb, as she was being held in jail on an attachment by the court for failure to appear. She also was pregnant with the defendant's child at the time of the trial. According to Misty, she was acquainted with Fortner because she previously purchased drugs from him (a fact Fortner denied in his testimony).
Misty testified that on the morning in question she was riding in the vehicle with Fortner when the defendant saw them. Misty claimed she got down on the floor of the vehicle and covered her head because she did not want the defendant to see her. The defendant and Former started arguing about letting her out of the vehicle. Misty testified that she asked Former to let her out of the vehicle, but he locked the doors and refused to let her get out. Immediately thereafter, the shots were fired. Misty testified that when the shots were fired at Former's vehicle she was "scared." However, Misty claimed she was on the floor and did not see who did the shooting. She further testified that Former had a gun inside his vehicle, a fact that Former denied in his testimony.
Misty admitted that she provided a written statement to the police on the date in question. Misty's statement was introduced into evidence at trial. In the statement, she wrote:
I was riding down Pontchatrain Dr. when [the defendant] began to shoot at the [vehicle] I was riding in. I immediately got down and covered my head. When he stopped chasing us, I got out of the car and walked home. When I came home[,] he was here waiting for me.
Barbara Swinford, Misty's mother, testified that on the date in question, at sometime between one and two o'clock in the morning, the defendant began beating on her door. He was visibly upset and crying. He told Ms. Swinford that he had just shot at the vehicle in which Misty was riding. The defendant told Ms. Swinford that Misty was with a black guy and that he wanted to kill the guy. Ms. Swinford reported the matter to the police. She also provided a written statement recounting her conversation with the defendant on the morning in question. In the statement, which was introduced into evidence at the trial, Ms. Swinford stated that the defendant was yelling, screaming, and kicking things outside her residence. He stated, "I just put 5 bullets in the car your daughter is in[,] and I'm going to kill the guy who is driving the car." According to Ms. Swinford, the defendant did not state that the driver of the vehicle was armed with a gun. Ms. Swinford advised that she was going to call the police. Shortly thereafter, Misty walked up and told the defendant to leave.
Detective Edward Lamulle Jr. testified that at the time of the arrest, the defendant provided a tape-recorded statement wherein he admitted to the shooting. According to Det. Lamulle, the defendant initially indicated that the driver of the vehicle pointed a weapon at him. However, once Det. Lamulle advised the defendant that Misty and her parents provided statements to the contrary, the defendant changed his story.
In his taped statement, the defendant explained that he and Misty had been separated for approximately two days. After he was unsuccessful in attempting to contact Misty on the telephone, he decided to drive over to her parents' residence. As he was driving, he observed Misty riding in the vehicle with Fortner. The defendant explained that he tried to get Fortner to stop the vehicle, but he would not. The defendant claimed Fortner was a "dirty person," and he wanted Misty out of the truck with him. He stated that he did not want to hurt Misty; he just wanted her out of the truck. The defendant admitted that he became upset at the sight of Misty in the vehicle with Fortner. He explained that when Fortner refused to stop the vehicle he shot directly at the vehicle several times from the driver's side of his vehicle. He hit the fender and other areas of the vehicle. The defendant claimed he did not want to hit Misty or Fortner. He simply wanted Fortner to stop the vehicle. The defendant did not know where the gun was at the time of his arrest. The defendant surmised that the gun had fallen out of the vehicle when the passenger door was opened while the vehicle was in motion. The defendant's taped statement was introduced into evidence and played for the jury at the trial.
Considering the foregoing evidence, it is undisputed that the defendant fired multiple shots from his vehicle directly at Former's vehicle. The defendant's argument that his conviction should be reversed because the state's evidence failed to show that he possessed specific intent to kill, cause harm, or frighten Former or Misty lacks merit. Assault by drive-by shooting does not necessarily require specific intent to kill. An assault is an attempt to commit a battery or the intentional placing of another in reasonable apprehension of receiving a battery. La. R.S. 14:36. Assault by drive-by shooting is an assault committed when a firearm is discharged from a motor vehicle. See La. R.S. 14:37.1 A. Herein, even assuming the defendant did not intend to hit anyone as he fired the gun directly at the occupied vehicle, clearly anyone in the position of those inside the vehicle would have been in reasonable fear that one of the shots might hit them. In fact, in her statement to the police, Misty stated that once the shooting began she immediately got down and covered her head. Misty testified that when the gunshots were fired at the car she was "scared." This assignment of error lacks merit.

EXCESSIVE SENTENCE
In this assignment of error, the defendant contends the concurrent five-year sentences are unconstitutionally excessive. Specifically, he argues that, although they are to be served concurrently, sentences that are the maximum allowed by law are inappropriate in this case because the trial court failed to provide sufficient justification for the sentences. He further argues that the trial court failed to give adequate consideration to the La. Code Crim. P. art. 894.1 factors and the relevant mitigating factors, i.e., the defendant showed remorse and neither victim wished to pursue criminal charges.
The procedural requirements for objecting to a sentence are provided in La. Code Crim. P. art 881.1, which provides in pertinent part as follows:
A. (1) In felony cases, within thirty days following the imposition of sentence or within such longer period as the trial court may set at sentence, the state or the defendant may make or file a motion to reconsider sentence.
* * *
B. The motion shall be oral at the time of sentence or shall be in writing thereafter and shall set forth the specific grounds on which the motion is based.
* * *
E. Failure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review. (Emphasis added.)
Our review of the record reflects that defense counsel did not make a written or oral motion to reconsider sentence. Under Louisiana Code of Criminal Procedure articles 88 LIE and 881.2A(1), the failure to file or make a motion to reconsider sentence precludes a defendant from raising an objection to the sentence on appeal, including a claim of excessiveness. See State v. Duncan, 94-1563 (La. App. 1 Cir. 12/15/95), 667 So.2d 1141, 1143 (en banc per curiam). Thus, the defendant is barred procedurally from now having this assignment of error reviewed on appeal. State v. LeBouef, 97-0902 (La. App. 1 Cir. 2/20/98), 708 So.2d 808, 809, writ denied, 98-0767 (La. 7/2/98), 724 So.2d 206.

CONCLUSION
For the foregoing reasons, the defendant's convictions and sentences are affirmed.
CONVICTIONS AND SENTENCES AFFIRMED.