# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE                                    NEWS RELEASE #005

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **30th day of January, 2018**, are as follows:

**PER CURIAM**:

2016-K -1502          STATE OF LOUISIANA v. DARRYL JONES (Parish of Ascension)

Based on the evidence presented, the jury could only speculate
defendant was guilty as a principal to the second degree murder.
When issues are raised on appeal both as to the sufficiency of
the evidence and as to one or more trial errors, the reviewing
court should first assess the sufficiency of the evidence, see
State v. Hearold, 603 So.2d 731, 734 (La. 1992), because the
accused may therefore be entitled to an acquittal under Hudson v.
Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981).
Defendant here is so entitled. See generally State v. Corkern,
593 So.2d 1259, 1260 (La. 1992) (per curiam) (When the state's
evidence merely invites the jury to speculate on a number of
reasonable probabilities, some consistent with guilt, others
consistent of innocence, a reasonable jury must entertain a
reasonable doubt of the defendant's guilt.); see also State v.
Schwander, 345 So.2d 1173, 1175 (La. 1978)) ("[a] trial jury's
inference that an accused aided and abetted in a crime cannot be
'mere speculation based upon guilt by association.'") (quoting
State v. Williams, 310 So.2d 513, 515 (La. 1975)). Accordingly,
for the reasons assigned, defendant's conviction and sentence are
reversed and a judgment of acquittal is entered in his favor.
REVERSED.

WEIMER, J., additionally concurs.

# SUPREME COURT OF LOUISIANA

## No. 2016-K-1502

## STATE OF LOUISIANA

## VERSUS

## DARRYL JONES

### ON WRIT OF CERTIORARI TO THE COURT OF APPEAL, FIRST CIRCUIT, PARISH OF ASCENSION

**PER CURIAM**

Codefendants Darryl Jones, Cecil Ray Beals, and Calvin K. Williams were indicted, tried together, and found guilty of the second degree murder of their associate Gerald G. Wilkins. The evidence presented at trial established that Beals, Williams, and the victim regularly visited defendant Darryl Jones's home in Baton Rouge. Beals also lived in defendant's garage. Notably, all were present there on the day and evening before Wilkins was killed.

Wilkins was found alongside Panama Road in Sorrento, dead, with two gunshot wounds to the head. The victim was holding a crack pipe and appeared to have been shot while he was urinating. A witness heard the gunshots and saw a distinctive vehicle (like that owned by defendant and often used by Beals) speeding down Panama Road between 3:30 and 4:00 a.m. on January 12, 2013. Officers obtained surveillance video showing Beals at a gas station near the crime scene with defendant's vehicle at 3:38 a.m. The surveillance video also showed an unidentified driver and an unidentified backseat passenger.

Defendant told police that the victim was at defendant's home on January

11, 2013, and that the victim left between 10:00 and 11:00 p.m., never to return. Defendant also told police that the victim was a troublemaker but that defendant had instructed his friends not to harm the victim. Marvin McGee, another associate of the codefendants, testified he habitually used drugs at defendant's residence with the codefendants. McGee said he was also present at defendant's home on January 11 and that, although defendant's vehicle was gone at about 10:30 or 11:00 p.m. and Williams and Beals with it, defendant stayed home all that night. McGee also confirmed that the victim was a troublemaker, i.e. he had robbed Justin Thomas (who retaliated by shooting the victim's mother's home), robbed defendant, and he used counterfeit money to purchase drugs.

McGee also loaned Williams a cell phone. Cell phone records showed that McGee's phone was transported from Baton Rouge to Sorrento where it was used around the time of the murder, and then returned to Baton Rouge. It was used to call both the victim and defendant's phones several times as well as a phone belonging to Williams's half-brother Shawn Aikens. Defendant's phone never left Baton Rouge. Most of the calls to defendant's phone were unanswered. Nicole Billingsley, defendant's girlfriend, testified that defendant was at home in bed with her at the time of the murder. She said that defendant's phone often rang and that defendant had a friendly relationship with the victim.

Jeremiah Billingsley, Nicole's ex-husband, testified that he was incarcerated with Beals after the crime. Beals told him that the victim had repeatedly stolen from defendant and therefore Beals offered to "take care of him" but defendant declined and instead told Beals not to touch the victim. Beals also told Billingsley that he and Williams took the victim to Sorrento and killed him when he got out of the car to urinate. When Beals was interviewed by police, he stated, "If I would have killed [the victim,] I would have shot him in broad daylight from the distance.

2

I would have not walked up on him from the back and shot him." At the time of that statement, police had not disclosed the manner in which the victim was killed.

The court of appeal found this evidence sufficient to prove that defendant was a principal to the murder although he was not present at the time of the murder. *State v. Jones*, 15-0649 (La. App. 1 Cir. 7/7/26) (unpub'd). Specifically, the court of appeal found it sufficient that the victim was transported to the location where he was killed in defendant's vehicle, the cell phone records showed cell phone contact between the persons who committed the murder and defendant, and defendant afterward asked McGee to bring the phone he loaned to Williams to him rather than provide it to police:

> Thus, the guilty verdict in this case indicates the jury apparently concluded that, after being driven to Sorrento in defendant Jones' vehicle, the victim was murdered, and defendant Jones was a principal and guilty of that murder. The jury could have reasonably interpreted the substantial cell phone usage records in evidence as showing that defendant Jones participated in the murder through repeated contact with the victim and with Mr. Beals and Mr. Williams throughout the hours before and after the victim's murder. The jury's verdict also indicates it rejected defendant Jones' claim that he went to bed at 2 a.m. on the morning of the murder. Further, the jury reasonably could have interpreted defendant Jones' instruction to Mr. Magee to withhold the borrowed cell phone from the police as indicating defendant Jones' guilty knowledge of information contained on that cell phone that implicated him in the murder.

*Jones*, 15-0649, p. 11.

Judge Theriot dissented finding this circumstantial evidence was insufficient to exclude every reasonable hypothesis of innocence. Judge Theriot noted that Billingsley's testimony did not even implicate defendant, who according to this jailhouse informant *declined* Beals's offer to "take care of" the victim and instead instructed Beals to leave the victim alone. Judge Theriot also noted that the calls on the night of the murder to defendant's phone were unanswered. Finally, Judge Theriot noted that, although defendant became an accessory after the fact when he

3

tried to obtain McGee's phone, that crime is not responsive to a charge of murder. While it is true that defendant's car was used to commit the crime, Judge Theriot found that there was no evidence in the record showing that defendant directed Beals or Williams to commit murder. We agree.

Under the due process standard of *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original), "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." When reviewing a conviction based upon circumstantial evidence, the reviewing court must determine whether, viewing the evidence in the light most favorable to the prosecution, a reasonable trier of fact could have concluded beyond a reasonable doubt that every reasonable hypothesis of innocence had been excluded. *See State v. Morris*, 414 So.2d 320, 321–22 (La. 1982) (citation omitted); *see also State v. Captville*, 448 So.2d 676, 680 (La. 1984) ("When a case involves circumstantial evidence, and the jury reasonably rejects the hypothesis of innocence presented by the defendant's own testimony, that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt."). The reviewing court "does *not* determine whether another *possible* hypothesis has been suggested by defendant which *could* explain the events in an exculpatory fashion; rather, the reviewing court] evaluates the evidence in the light most favorable to the prosecution and determines whether the alternative hypothesis is sufficiently reasonable that a rational factfinder could not 'have found proof of guilt beyond a reasonable doubt.'" *Captville*, 448 So.2d at 680 (emphasis in original; citation omitted).

Principals to an offense are defined as:

All persons concerned in the commission of a crime, whether present

or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals.

La.R.S. 14:24. The crime of second degree murder, in pertinent part, is the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm. La.R.S. 14:30.1(A)(1). Thus, to prove defendant guilty as a principal to second degree murder in the present case, the state was required to prove defendant aided or abetted in the killing of a human being when he had a specific intent to kill or to inflict great bodily harm, or he directly or indirectly counseled or procured another to commit the crime.[1]

We have repeatedly cautioned that the due process standard of *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), "does not permit a reviewing court to substitute its own appreciation of the evidence for that of the fact finder or to second guess the credibility determinations of the fact finder necessary to render an honest verdict." *State v. Calloway*, 07–2306, p. 10 (La.1/21/09), 1 So.3d 417, 422. In cases of circumstantial evidence, the *Jackson* standard means that when a jury "reasonably rejects the hypothesis of innocence presented by the [defense], that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt." *State v. Captville*, 448 So.2d 676, 680 (La. 1984). Nevertheless, the *Jackson* standard does not permit jurors "'to speculate if the evidence is such that reasonable jurors must have a reasonable doubt.'" *State v. Mussall*, 523 So.2d 1305, 1311 (La.1988) (quoting 2 C. Wright, *Federal Practice & Procedure*, Criminal 2d § 467 at 660–61 and n.23 (2d ed. 1982). Here, as the dissent found, "[t]he record is void of evidence that

---

[1] As proof of the defendant's guilt the state indicated in its brief that "after the victim continued to steal drugs from [the defendant] Jones, Beals told Billingsley that Jones told him 'he's yours.' Based upon that affirmation, Billingsley stated that Beals killed the victim." The state suggests this was an indication by the defendant to Beals that the victim should be killed.

5

[defendant] gave any counsel to Beals or Williams, directly or indirectly, in the commission of the crime." *Jones*, 15-0649, p. 2 (Theriot, J., dissenting). Based on the evidence presented, the jury could only speculate defendant was guilty as a principal to the second degree murder.

When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first assess the sufficiency of the evidence, *see State v. Hearold*, 603 So.2d 731, 734 (La. 1992), because the accused may therefore be entitled to an acquittal under *Hudson v. Louisiana*, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981). Defendant here is so entitled. *See generally State v. Corkern*, 593 So.2d 1259, 1260 (La. 1992) (per curiam) (When the state's evidence merely invites the jury to speculate on a number of reasonable probabilities, some consistent with guilt, others consistent of innocence, a reasonable jury must entertain a reasonable doubt of the defendant's guilt.); *see also State v. Schwander*, 345 So.2d 1173, 1175 (La. 1978)) ("[a] trial jury's inference that an accused aided and abetted in a crime cannot be 'mere speculation based upon guilt by association.'") (quoting *State v. Williams*, 310 So.2d 513, 515 (La. 1975)). Accordingly, for the reasons assigned, defendant's conviction and sentence are reversed and a judgment of acquittal is entered in his favor.

**REVERSED**

---

However, there was no evidence submitted to the jury to corroborate this statement, which was made by counsel for the state at a bench conference.

01/30/18

SUPREME COURT OF LOUISIANA

No. 2016-K-1502

STATE OF LOUISIANA

VERSUS

DARRYL JONES

*ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
FIRST CIRCUIT, PARISH OF ASCENSION*

**WEIMER, J.**, additionally concurring.

I agree with the majority opinion, writing separately to point out that as proof of defendant's guilt, the state indicated in its brief that "after the victim continued to steal drugs from [the defendant] Jones, Beals told Billingsley that Jones told him 'he's yours.' Based on that affirmation, Billingsley stated that Beals killed the victim." The state suggests this was an indication by the defendant to Beals that the victim should be killed. However, there was no evidence submitted to the jury to corroborate this statement, which was made by counsel for the state at a bench conference.