STATE of Louisiana

v.

Neely GARDNER

NO. 2016 KA 0192

Court of Appeal of Louisiana,
First Circuit.

Judgment Rendered: September 19, 2016

---

Camille A. Morvant II, District Attorney, Annette M. Fontana, Joseph S. Soignet, Assistant District Attorneys, Thibodaux, Louisiana, Attorneys for Appellee, State of Louisiana

Mary E. Roper, Baton Rouge, Louisiana Attorney for Appellant, Neely Gardner

BEFORE: WELCH, CRAIN, AND HOLDRIDGE, JJ.

CRAIN, J.

The defendant, Neely Gardner, was convicted of manslaughter and sentenced to fifteen years imprisonment at hard labor. We affirm the conviction, but vacate the sentence and remand this matter for resentencing.

## FACTS

On June 5, 2014, the nineteen-year-old defendant shot his fifteen-year-old friend, Braxton Bourda, as they were hanging out with others in front of an abandoned house in Larose. The victim died of the single gunshot to the head. The defendant admitted that he fired the gun, but claimed that he did not deliberately point the gun at the

victim, and that the shooting was accidental.

## SUFFICIENCY OF THE EVIDENCE

The defendant was convicted of manslaughter. Manslaughter is a homicide that is committed without any intent to cause death or great bodily harm when the offender is engaged in the perpetration or attempted perpetration of certain crimes. *See* La. R.S. 14:31A(2)(a). The trial court found that the defendant deliberately pointed the gun at the victim and was engaged in an aggravated assault with a firearm when he unintentionally shot and killed the victim.[1] On appeal, the defendant challenges his conviction, arguing that there was insufficient evidence to prove that he was engaged in an aggravated assault with a firearm when he fired the gun. Rather, he argues, "all of the evidence pointed to a negligent homicide," and seeks to have his conviction reduced accordingly.[2]

A conviction based on insufficient evidence cannot stand, as it violates due process. *See* U.S. Const. amend. XIV, La. Const. art. I, § 2. In reviewing claims challenging the sufficiency of the evidence, an appellate court must determine |₃whether any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt based on the entirety of the evidence, both admissible and inadmissible, viewed in the light most favorable to the prosecution. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *State v. Oliphant*, 13–2973 (La. 2/21/14), 133 So.3d 1255, 1258; *see also* La. Code Crim. Pro. art. 821B; *State v. Mussall*, 523 So.2d 1305, 1308–09 (La.1988). When circumstantial evidence forms the basis of the conviction, the evidence, "assuming every fact to be proved that the evidence tends to prove ... must exclude every reasonable hypothesis of innocence." La. R.S. 15:438; *Oliphant*, 133 So.3d at 1258. The due process standard does not require the reviewing court to determine whether it believes the witnesses or whether it believes the evidence establishes guilt beyond a reasonable doubt. *State v. Mire*, 14–2295 (La. 1/27/16), —— So. 3d ——, —— (2016 WL 314814). Rather, appellate review is limited to determining whether the facts established by the direct evidence and inferred from the circumstances established by that evidence are sufficient for *any* rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. *State v. Alexander*, 14–1619 (La.App.1 Cir.2015), 182 So.3d 126, 129, *writ denied*, 15–1912 (La. 1/25/16), 185 So.3d 748.

The issue on appeal is whether the evidence presented at trial was sufficient for any rational trier of fact to conclude beyond a reasonable doubt that the defendant was engaged in an aggravated assault with a firearm when he fired the gun. Aggravated assault with a firearm is an assault committed by the discharge of a firearm. La. R.S. 14:37.4A. An "assault" is an attempt to intentionally use force or violence on a person, or an attempt to place another in reasonable apprehension of receiving force or violence. *See* La. R.S. 14:33; La. R.S. 14:36. The elements of assault are (1) the intent-to-scare mental element (general intent), (2) conduct by the |₄defendant of the sort to arouse a reasonable apprehension of bodily harm, and (3) the resulting apprehension on the part of

---

1. The defendant waived his right to a trial by jury, and this matter was tried as a bench trial.

2. Negligent homicide is a responsive verdict to manslaughter. *See* La. Code Crim. Pro. art. 814A(5).

the victim. *See State in Interest of K.M.*, 14–0306 (La.App.4 Cir.2014), 146 So.3d 865, 872; *State in Interest of Tatom*, 463 So.2d 35, 37 (La.App.5 Cir.1985). Circumstantial evidence of a victim's state of mind can be used to prove the element of reasonable apprehension. *State v. Boutte*, 10–1257 (La.App.3 Cir.2011), 65 So.3d 793, 796.

■ At trial, the state presented evidence that the defendant and victim were hanging out in front of the abandoned house with others, including Alton Jenkins, Malik Jenkins, Jayquan Bibs, and Anthony Mack. Both Alton and Malik testified that they saw the defendant with a gun and saw the defendant point the gun at Anthony before the victim was killed. Alton estimated this to have occurred one or two minutes before the victim was shot, whereas Malik approximated it to have occurred fifteen or twenty minutes prior. Alton did not recall the defendant saying anything when he pointed the gun at Anthony, but Malik testified that the defendant told Anthony, "You ain't about that life." Malik gave a statement to police wherein he related that he also saw the defendant point the gun at Jayquan that day; however, at trial Malik disputed making such a statement. In contrast, Jayquan testified that he did not see the defendant with a gun until immediately after the shooting, and that he had not seen the defendant point a gun at anyone. Both Alton and Malik testified that they were scared that the gun would fire when the defendant pointed it at Anthony, but only Alton admitted to knowing the gun was loaded. Anthony did not testify.

The witnesses' testimony established that the group was gathered on the porch of the abandoned house and that there was no argument or altercation between the defendant and the victim. The victim left the porch and began riding a bicycle on the street, making circles in front of the porch. According to Malik, the victim turned his bike around and faced the porch prior to being shot. Malik testified that the defendant called the victim's nickname, "B-Rad," before the gun fired, but on cross-examination, equivocated as to whether the defendant called the victim's name immediately before, concurrent with, or immediately after the shooting. Alton and Jayquan both denied hearing the defendant call the victim's name prior to the gunshot.

Both Alton and Jayquan testified that after the gun fired they looked at the defendant and saw him holding the gun at a level lower than his waist. They explained that the defendant was not in a shooter's stance. Alton described the defendant's appearance after the gunshot as scared and upset.

The defendant testified on his own behalf at trial. He explained that he found the gun on the side of the house three days prior to the shooting, and returned it there each day. The defendant admitted that he asked his cousin to purchase bullets on the day before the shooting so that he could see if the gun worked. Contrary to the testimony of the other eyewitnesses, the defendant claimed that he was not the only person to handle the gun on the day of the incident, stating that prior to the shooting, Malik took the gun to the end of the street to fire it and handed the gun to the defendant when he returned. The defendant denied pointing the gun at anyone on the day of the shooting.

The defendant described the shooting as "accidental." He denied calling out to the victim before the shooting, and denied pointing the gun at the victim or tracking the victim with the gun. According to the defendant, he was holding the gun sideways with the clip in his hands, unaware a live round was in the chamber, and the

gun fired when he pushed a button on the trigger that he thought was the safety. The defendant explained that he looked up to see the victim falling to the ground, and only at that point, when he realized what happened, did he call the victim's name. The defendant ran to the victim and pulled his body to the side of the roadway before fleeing the scene.

Lafourche Parish Sheriff's Office Detective, Aaron Arabie, testified that the defendant admitted that he shot Bourda, and that Alton, Malik, and Jayquan made statements to that effect. Detective Arabie stated that the defendant related that he found the gun on the side of the house, determined it was loaded, and was trying to remove the bullet from the chamber when the gun fired. The defendant stated that when he realized the victim had been hit, he ran toward him and called his name, then pulled the victim's body out of the street.

Detective Arabie noted that defendant's claim that he found the gun on the day of the shooting was inconsistent with other witnesses' statements that the defendant had a gun on days prior to the shooting. On rebuttal, Detective Arabie testified that the defendant never mentioned during his statement that anyone else used the gun on the day of the incident and that the defendant was clear about having found the gun on the day of the incident. He also testified that Jayquan explicitly stated that the defendant pointed the gun at others, including Jayquan himself.

Based on the evidence presented, the trial court rejected the defendant's argument that the evidence failed to establish that he deliberately pointed the gun at the victim. In oral reasons, the trial court explained that it found that all of the witnesses' testimony had been impeached "in some form or fashion." It then continued, finding that the defendant pointed the gun

at Anthony, Jayquan, and the victim. The trial court found that just prior to firing the gun, the defendant called out the victim's name to draw his attention, and that the defendant was pointing or aiming the gun at the victim. Thus, the trial court concluded, the essential elements of aggravated assault were proven and, therefore, the evidence supported a conviction of manslaughter based on the unintentional shooting of the victim when the defendant was in the perpetration of aggravated assault or aggravated assault with a firearm.

The fact that the record contains evidence which conflicts with the testimony accepted by the fact finder does not render that evidence insufficient. *State v. Quinn*, 479 So.2d 592, 596 (La.App.1 Cir.1985). The fact finder is free to accept or reject, in whole or in part, the testimony of any witness. When there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. The fact finder's determination of the weight to be given evidence is not subject to appellate review. In fact, appellate courts are constitutionally precluded from acting as a "thirteenth juror" in assessing the weight to be given evidence in criminal cases. *See State v. Mitchell*, 99–3342 (La. 10/17/00), 772 So.2d 78, 83. Accordingly, an appellate court will not reweigh the evidence to overturn a fact finder's determination of guilt. *State v. Taylor*, 97–2261 (La.App.1 Cir.1998), 721 So.2d 929, 932.

When a case involves circumstantial evidence and the fact finder reasonably rejects the hypothesis of innocence presented by the defendant's own testimony, that hypothesis falls, and the defendant is guilty unless there is another hypothesis that raises a reasonable doubt. *State v. Captville*, 448 So.2d 676, 680 (La.1984).

Based on the circumstantial evidence, the trial court determined that the defendant pointed the gun at the victim, and rejected the defendant's assertion that the gun fired as he negligently handled it. After review of the evidence, we find that the trial court was reasonable in rejecting the defendant's hypothesis of innocence relative to this element of the crime. We also find no other hypothesis of innocence concerning the pointing of the gun that raises a reasonable doubt.

The defendant argues that the evidence does not prove that the victim felt any reasonable apprehension of receiving a battery. While there is no direct evidence of this element of the crime, the trial court's guilty verdict indicates that it found this element to be satisfied from the circumstantial evidence. Viewed in the light most |8favorable to the state, the evidence demonstrates that the individuals present knew the gun was loaded, operable, and being handled in an unsafe manner. Further, the trial court accepted Malik's testimony that the victim turned his head to face the porch before the shooting. Having concluded that the defendant pointed the loaded gun at the victim, and that the victim faced the defendant before the fatal shot was fired, the finding that the defendant intentionally placed the victim in "apprehension of receiving a battery" was likewise reasonable. Again, in a case involving circumstantial evidence, if the fact finder reasonably rejects the defendant's hypothesis of innocence, the defendant is guilty unless another hypothesis that raises doubt is presented. *See State v. Moten*, 510 So.2d 55, 61 (La.App.1 Cir. 1987), *writ denied*, 514 So.2d 126 (La. 1987). There is no such hypothesis in this case.

The evidence, viewed in the light most favorable to the state, and to the exclusion of every reasonable hypothesis of inno-cence, supports the trial court's verdict that the defendant is guilty of manslaughter. An appellate court errs by substituting its appreciation of the evidence and credibility of witnesses for that of the fact finder and thereby overturning a verdict on the basis of an exculpatory hypothesis of innocence presented to, and rationally rejected by, the fact finder. *See State v. Calloway*, 07–2306 (La. 1/21/09), 1 So.3d 417, 418 (*per curiam*). The trial court's rejection of the defendant's hypotheses of innocence was not irrational under the facts and circumstances presented.

This assignment of error is without merit.

### SENTENCE

■ The trial court sentenced the defendant immediately after denying the defendant's motions for new trial and post-verdict judgment of acquittal. Louisiana Code of Criminal Procedure article 873 requires at least a twenty-four hour delay between denial of such motions and sentencing unless "the defendant *expressly* waives" the required delay. (Emphasis added.) Where a defendant does not |9*expressly* waive the delay required by Article 873 and challenges his sentence on appeal, the sentence must be vacated and the matter must be remanded so that a sentence can be legally imposed. *See State v. Augustine*, 555 So.2d 1331, 1334–35 (La. 1990).

The record does not reflect an express waiver by the defendant of the delay required by Article 873. Further, the defendant filed a motion to reconsider sentence in accordance with Louisiana Code of Criminal Procedure article 881.1 (that the trial court denied) and has challenged his sentence on appeal. Since the sentence imposed was not a mandatory one, we are required to vacate the sentence imposed and remand this matter so that a sentence

can be legally imposed. *See Augustine*, 555 So.2d at 1334; *contrast State v. Seals*, 95-0305 (La. 11/25/96), 684 So.2d 368, 380, *cert denied*, 520 U.S. 1199, 117 S.Ct. 1558, 137 L.Ed.2d 705 (1997) (where, because of the mandatory nature of the sentence, remand for resentencing was not required absent a showing that prejudice resulted from the failure to observe the delay).

**CONVICTION AFFIRMED; SENTENCE VACATED; REMANDED FOR RESENTENCING.**