NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2020 KA 0096

STATE OF LOUISIANA

VERSUS

JASON MATTHEW MAGEE

Judgment Rendered:  NOV 0 6 2020

Appealed from the
Twenty-Second Judicial District Court
In and for the Parish of St. Tammany
State of Louisiana
Docket Number 593209

Honorable August J. Hand, Judge Presiding

* * * * * * * * * * * * *

Warren L. Montgomery
Matthew Caplan
Covington, LA 70433

Counsel for Appellee,
State of Louisiana

Bertha M. Hillman
Covington, LA

Counsel for Defendant/Appellant,
Jason Matthew Magee

Jason Magee
Angola, LA

In Proper Person

* * * * * * * * * * * * *

BEFORE: WHIPPLE, C.J., WELCH, AND CHUTZ, JJ.

**WHIPPLE, C.J.**

The defendant, Jason Matthew Magee, was charged by grand jury indictment with two counts of first degree murder, violations of LSA-R.S. 14:30(A)(3). He pled not guilty. Following a jury trial, he was found guilty as charged. He was sentenced to two consecutive terms of life imprisonment at hard labor.[1] He now appeals, filing a counseled and a pro-se brief. In his counseled brief, he contends the evidence was only sufficient to support verdicts of manslaughter. In his pro-se brief, he contends: (1) patent error occurred when the trial court failed to rule on post-trial motions prior to sentencing; and (2) the trial court erred in denying the motion to require unanimous jury verdicts. For the following reasons, we affirm the defendant's convictions and sentences.

## FACTS

Jennifer Wallace Magee and the defendant were married and had two children together. They eventually divorced, however, and Jennifer began seeing Donald Gros. On June 19, 2017, the defendant became upset when he overheard his son ask to speak to Gros during a telephone call with Jennifer. The defendant dropped off his children at the home of his mother and step-father, and later called and confessed to his step-father that he had shot and killed Jennifer. The police went to Jennifer's residence in Pearl River in St. Tammany Parish and discovered her body and the body of Gros. Both victims had been shot to death.

---

[1] The trial minutes, verdict form, and trial transcript all correctly reflect that the defendant was convicted of two counts of *first* degree murder. The sentencing minutes indicate that at sentencing, the trial court stated that the defendant had "unlawfully violated COUNT 1, R.S. 14:30 SECOND DEGREE MURDER AND COUNT 2, SECOND DEGREE MURDER[.]" The sentencing transcript, however, reflects that the trial court made no reference to second degree murder in sentencing the defendant. When there is a discrepancy between the minutes and the transcript, the transcript must prevail. State v. Lynch, 441 So. 2d 732, 1734 (La. 1983).

## SUFFICIENCY OF THE EVIDENCE

In his sole counseled assignment of error, the defendant contends the evidence was insufficient to support the convictions because he established he was provoked by the knowledge that Jennifer, his former wife, was with another man who had established a relationship with the defendant's children and "[o]nly twenty minutes elapsed between Jennifer's call to [the defendant] and [the defendant's] call to his parents."

A conviction based on insufficient evidence cannot stand, as it violates due process. See U.S. Const. amend. XIV, La. Const. art. I, § 2. In reviewing claims challenging the sufficiency of the evidence, an appellate court must determine whether any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt based on the entirety of the evidence, both admissible and inadmissible, viewed in the light most favorable to the prosecution. See Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); State v. Oliphant, 2013-2973 (La. 2/21/14), 133 So. 3d 1255, 1258-59 (per curiam); see also LSA-C.Cr.P. art. 821(B); State v. Mussall, 523 So. 2d 1305, 1308-1309 (La. 1988). State v. Livous, 2018-0016 (La. App. 1st Cir. 9/24/18), 259 So. 3d 1036, 1039-1040, writ denied, 2018-1788 (La. 4/15/19), 267 So. 3d 1130. When circumstantial evidence forms the basis of the conviction, the evidence, "assuming every fact to be proved that the evidence tends to prove . . . must exclude every reasonable hypothesis of innocence." LSA-R.S. 15:438; Oliphant, 133 So. 3d at 1258; Livous, 259 So. 3d at 1040.

The due process standard does not require the reviewing court to determine whether it believes the witnesses or whether it believes the evidence establishes guilt beyond a reasonable doubt. State v. Mire, 2014-2295 (La. 1/27/16), 269 So. 3d 698, 703 (per curiam). Rather, appellate review is limited to determining whether

the facts established by the direct evidence and inferred from the circumstances established by that evidence are sufficient for any rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Gardner, 2016-0192 (La. App. 1st Cir. 9/19/16), 204 So. 3d 265, 267. The weight given evidence is not subject to appellate review; therefore, an appellate court will not reweigh evidence to overturn a fact finder's determination of guilt. Livous, 259 So. 3d at 1040.

The crime of first degree murder, in pertinent part, is the killing of a human being when the offender has a specific intent to kill or inflict great bodily harm upon more than one person. LSA-R.S. 14:30(A)(3). Specific criminal intent is "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." LSA-R.S. 14:10(1). Specific intent may be formed in an instant. State v. Mickelson, 2012-2539 (La. 9/3/14), 149 So. 3d 178, 183. Because it is a state of mind, specific intent need not be proven as a fact, but may be inferred from circumstances surrounding the offense and the defendant's actions. Mickelson, 149 So. 3d at 182. For example, specific intent to kill may be inferred from a defendant's act of pointing a gun and firing at a person. State v. Reed, 2014-1980 (La. 9/7/16), 200 So. 3d 291, 309, cert. denied, ___ U.S. ___, 137 S. Ct. 787, 197 L. Ed. 2d 258 (2017).

Manslaughter is a homicide that would be first degree murder or second degree murder but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. LSA-R.S. 14:31(A)(1). "Sudden passion" and "heat of blood" are mitigating factors in the nature of a defense. If the defendant establishes those factors by a preponderance of the evidence, a verdict for murder is

4

inappropriate. Reed, 200 So. 3d at 311; State v. Eby, 2017-1456 (La. App. 1st Cir. 4/6/16), 248 So. 3d 420, 424-25, writ denied, 2018-0762 (La. 2/11/19), 263 So. 3d 1153. However, provocation will not reduce a homicide to manslaughter if the fact finder finds the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed. See LSA-R.S. 14:31(A)(1). In other words, if a man unreasonably permits his impulse and passion to obscure his judgment, he will be fully responsible for the consequences of his act. State v. Leger, 2005-0011 (La. 7/10/06), 936 So. 2d 108, 171, cert. denied, 549 U.S. 1221, 127 S. Ct. 1279, 167 L. Ed. 2d 100 (2007). Provocation and time for cooling off are determinations made by the fact finder using the standard of the average or ordinary person with ordinary self-control. Reed, 200 So. 3d at 311; Livous, 259 So. 3d at 1040.

Lawrence Hudson was a detective with the St. Tammany Parish Major Crimes Unit at the time of the offenses. When he approached Jennifer's residence, he noticed broken glass and saw that the window pane divider closest to the door knob on the front door had been broken. Inside the residence, police discovered eight 9mm aluminum bullet casings, the body of Jennifer's body with four gunshot wounds, and Gros's body with three gunshot wounds. A neighbor reported she had observed a pickup truck fleeing from the residence prior to the arrival of law enforcement officers. A subsequent search of the defendant's residence revealed a box for 9mm ammunition for aluminum-cased rounds that actually contained some other type of ammunition. The police did not find a 9mm weapon in the residence. Neither the weapon used to kill the victims, nor the defendant's cell phone, nor his truck were ever recovered.

Detective Hudson testified that phone records indicated that on the day of the incident, Jennifer called the defendant at 8:17 p.m.; the defendant called Jennifer at

5

8:22 p.m. and at 8:36 p.m.; and the defendant called the home phone of his mother and step-father at 8:39 p.m. It took Detective Hudson two minutes and thirty-five seconds to drive between Jennifer's house and the house of the parents of the defendant.

Detective Hudson also interviewed the defendant after he was apprehended. In regard to the incident, the defendant stated, "[I]t's just been building. I tried to talk to this girl. I sat on her couch and cried and told her this was going to happen if she didn't just f-----g stop."

Kaitlyn Magee, the defendant's daughter, was a passenger in his truck shortly before the incident. That night, she and her brother were staying with the defendant, rather than with their mother. Jennifer called Kaitlyn to say goodnight, and during the call, the defendant's son asked to talk to Jennifer's boyfriend. The defendant became upset and instead of taking Kaitlyn and her brother to his home, he drove to Jennifer's house "to check if someone was there." He then dropped off Kaitlyn and her brother at the home of the defendant's mother and step-father. Kaitlyn had never met Gros and, to the best of her knowledge, neither had her brother. Gros had given Jennifer an Xbox One video game system and was supposed to drop off some games for the system.

After the incident, the defendant called his mother and ultimately ended up speaking to Tommy Cooper, his step-father. According to Cooper, the defendant was "excited" and "wasn't under control." Cooper asked the defendant what was wrong. The defendant replied, he "F'd up." Cooper asked "Matt, what is wrong? What happened?" The defendant answered "I shot her." Cooper asked "Who did you shoot?" The defendant replied, "I shot Jennifer. I killed her." The defendant asked Cooper to please take care of the defendant's children and told him that he

6

loved them. Cooper told the defendant "Don't run. If they -- you run, they're going to kill you."

After a careful review of the entire record, viewing all of the evidence in the light most favorable to the State, we conclude that any rational trier of fact could have found that the State proved beyond a reasonable doubt that the defendant was guilty of the first degree murder of the victims and that no mitigating factors were established by a preponderance of the evidence. While the defendant apparently shot both victims within minutes of his son asking to talk to Gros, the evidence indicates the defendant's blood actually cooled, or an average person's blood would have cooled, by the time of the offenses. Specifically, before killing the victims, the defendant drove by Jennifer's house to see if Gros was there and then dropped off his children at the home of his mother and step-father. Evidence at the crime scene established the defendant then carefully broke out the glass nearest the door knob to gain entry into Jennifer's home before shooting Gros three times and shooting Jennifer four times. After killing the victims, the defendant sped off, disposed of the murder weapon, disposed of his cell phone, and disposed of his truck. When finally apprehended, the defendant candidly told police he had warned the victim "this was going to happen if [the victim] didn't just f-----g stop."

In reviewing the evidence, we cannot say the jury's determination was irrational under the facts and circumstances presented. See State v. Ordodi, 2006-0207 (La. 11/29/06), 946 So. 2d 654, 662; Livous, 259 So. 3d at 1043-44. Moreover, an appellate court errs by substituting its appreciation of the evidence and credibility of the witnesses for that of the fact finder and thereby overturning a verdict on the basis of an exculpatory hypothesis of innocence presented to, and rationally rejected by, the jury. See State v. Calloway, 2007-2306 (La. 1/21/09), 1 So. 3d 417, 418 (per curiam); Livous, 259 So. 3d at 1043. To otherwise accept a

hypothesis of innocence that was not unreasonably rejected by the fact finder, a court of appeal impinges on a fact finder's discretion beyond the extent necessary to guarantee the fundamental protection of due process of law. See Mire, 269 So. 3d at 703.

This assignment of error is without merit.

## PRO-SE ASSIGNMENTS OF ERROR

In pro-se assignment of error number one, the defendant contends patent error occurred in this matter because the trial court sentenced him prior to ruling on the motions for new trial and post-verdict judgment of acquittal. In pro-se assignment or error number two, the defendant contends the trial court erred in denying his "motion for unanimous jury verdict."

With exceptions inapplicable here, a motion for new trial must be filed and disposed of before sentence. LSA-C.Cr.P. art 853(A). Similarly, a motion for post verdict judgment of acquittal must be made and disposed of before sentence. LSA-C.Cr.P. art. 821(A). In the instant case, motions for new trial and post-verdict judgment of acquittal were filed, argued, and denied prior to sentencing. Accordingly, pro-se assignment of error number one is without merit.

The defendant also filed a "motion for unanimous jury verdict." In the motion, the defendant argued for retroactive application of the 2018 amendment to Louisiana Constitution article I, § 17(A), requiring unanimous verdicts for cases for offenses committed on or after January 1, 2019, in which the punishment is necessarily confinement at hard labor. In the alternative, the defendant argued that a non-unanimous verdict would deprive him of equal protection of the law in violation of the Sixth and Fourteenth Amendments to the United States Constitution

8

and Article I, §§ 2 and 3 of the Louisiana Constitution. The trial court denied the motion.[2]

Unanimous verdicts were returned in this matter. Accordingly, the denial of the defendant's "motion for unanimous jury verdict" did not affect substantial rights of the defendant. See LSA-C.Cr.P. art. 921. Accordingly, pro-se assignment of error number two is also without merit.

**CONVICTIONS AND SENTENCES AFFIRMED.**

---

[2]The trial court considered and denied the motion prior to the decision in **Ramos v. Louisiana,** __ U.S. __, 140 S.Ct. 1390, 206 L.Ed.2d 583 (2020).