STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2022 KA 0795

STATE OF LOUISIANA

VERSUS

ULY RAMON HENDERSON

Judgment Rendered: **FEB 2 4 2023**

Appealed from the
32nd Judicial District Court
In and for the Parish of Terrebonne
State of Louisiana
Docket No. 789790

The Honorable Timothy C. Ellender, Jr., Judge Presiding

| | |
|---|---|
| Joseph L. Waitz, Jr.<br>District Attorney<br>Gary Williams, Jr.<br>Ellen Daigle Doskey<br>Assistant District Attorney<br>Houma, LA | Appellee,<br>State of Louisiana |
| Bruce G. Whittaker<br>New Orleans, LA | Defendant/Appellant,<br>Uly Ramon Henderson |

BEFORE: GUIDRY, C.J., WOLFE, AND MILLER, JJ.

**MILLER, J.**

The defendant, Uly Ramon Henderson, was charged by bill of information with third degree rape, a violation of La. R.S. 14:43, and pled not guilty. Following a jury trial, he was found guilty as charged by unanimous verdict. He moved for a new trial and a post-verdict judgment of acquittal.

The State then filed a bill of information against the defendant, seeking to adjudicate him as a second felony offender.[1] The defendant denied the allegations of the habitual offender bill. At the habitual offender hearing, the court denied the post-conviction motions, and the defendant waived sentencing delays. Thereafter, the court adjudged the defendant a second-felony habitual offender and sentenced him to twenty-five years at hard labor without benefit of probation, parole, or suspension of sentence.

The defendant moved for reconsideration of sentence orally and in writing. However, prior to the hearing on the defendant's motion for reconsideration of sentence, the defendant filed a motion to appeal his conviction and sentence. When the motion to reconsider appeared on the docket at a subsequent hearing date, the minutes reflect that upon motion of the defendant, the trial court ordered that the motion was moot.

On appeal, the defendant challenges the evidence as insufficient and the sentence as excessive. For the following reasons, we affirm the conviction, habitual offender adjudication, and sentence.

## FACTS

The victim, C.R.,[2] was born on December 20, 2005. She testified that on December 20, 2019,[3] when she was thirteen years old, she lived in Houma with her

---

[1]The predicate offense was set forth as the defendant's April 20, 2017 guilty plea, under Seventeenth Judicial District Court docket number 560,656 to possession with intent to distribute cocaine.

[2]C.R. is referenced herein only by her initials. See La. R.S. 46:1844(W).

2

mother and step-father. The defendant was her first cousin - the son of her mother's sister.

At trial, the State played a January 7, 2019 interview with C.R. recorded at the Child Advocacy Center (CAC). In the interview, recorded on a Monday, C.R. indicated she had been lying in her bed with her twenty-three year old first cousin, the defendant, at approximately 1:00 a.m. on Sunday, January 6. C.R. stated that her feet were facing the defendant's head, and his head was facing her feet. According to C.R., the defendant started "humping" her leg with his "private part." He also touched her between her legs and played with her private part. He then pulled his shorts down and pulled C.R.'s "tights, drawers, shorts" down. Thereafter, C.R. stated the defendant "started forcing himself on me and in me." She stated the defendant put his "private part in [her] butt." She also stated, "it hurted," and when she started "pushing away," the defendant told her to "keep still." She further stated, "at the end of it all, he had put my hand on his private part." Thereafter, the defendant gave C.R. four dollars. C.R. "got [her] stuff and went out the house."

C.R. confirmed at trial that the defendant "put his thing in [her], in [her] butt." She testified that the defendant got out of the bed, went around the bed, "took my legs and ... put them over and he pulled ... my pants about right there ... [a]nd my body, half of my body was leaning off the bed. And that's when he forced himself in me." She stated she ran out of the room after the defendant "put his private part in my hand."

On January 7, 2019, Quiana Daniels Jones was employed as a Terrebonne Parish School Board social worker at Oaklawn Junior High School. On that day, someone reported to her in a phone call that C.R. had been sexually assaulted.

---

[3]The State may have intended to question C.R. about where she lived on December 20, 2018 - when she turned thirteen years old and shortly prior to the offense.

Jones advised the person to call the police. Thereafter, she spoke to C.R. at school. According to Jones, C.R. had normally smiled when she saw her, but on this occasion she "looked like down, sad." C.R. told Jones, "Uly, her cousin[,] had put his, his private in her butt[,]" at her house.

Terrebonne Parish Sheriff's Office Detective Monica Odom investigated C.R.'s claims against the defendant. That same day, Detective Odom arrived at the school at approximately 11:00 a.m. C.R. told Detective Odom that she had been raped by her cousin Uly. Detective Odom scheduled an appointment for C.R. with the CAC at 12:30 p.m. that day.

Sandy Borne, a notary public in Thibodaux, notarized a July 25, 2019 affidavit in which C.R. stated she had an encounter with the defendant which resulted in charges being placed against him for third degree rape. The affidavit stated, "I do not wish to put myself through a trial and no longer wish to pursue these charges which were filed against [the defendant], and respectfully ask that these charges be dropped." However, Borne testified at trial that she did not recall either C.R. or the adults that accompanied her, stating that the charges against the defendant were "made up" or that C.R. was lying. According to Borne, the female accompanying C.R. stated she wanted the charges dropped because she did not want the defendant to go to jail because he had a four-year-old child.

G.W. is the cousin of C.R. G.W. testified that he lived down the street from C.R. G.W. further testified that C.R. called him at 1:00 a.m. on the night of the incident and asked him to open his door. He stated that C.R. came to his door in tears, holding her shoes in her hands. According to G.W., C.R. came inside and "just kept crying." When he asked her what was wrong, she reported the defendant had rubbed her legs and "[h]is thing touched her booty." Thereafter, C.R. called G.W. to the bathroom to show him blood on a paper towel. G.W. conceded he did

4

not know if C.R. had wiped herself from the front or from the back with the paper towel. He also testified that he did not know if "her cycle" had started.

G.W.'s mother is the second cousin of C.R. On January 6, 2019, G.W. called her and gave her information concerning C.R., which caused her to return home immediately. C.R. reported to her that the defendant had raped her.

Tammy Rash was employed by the Louisiana State Police Crime Lab (LSPCL) as a DNA analyst. She testified that a sexual assault kit from C.R. was submitted for analysis on January 14, 2019. She further testified that two cuttings from a bed sheet, and a reference sample from the defendant were submitted to LSPCL for analysis on January 14, 2019. Following a screening on January 14, 2019, the defendant's DNA was not found on the reference swabs from C.R. Rash conceded she was not privy to information concerning whether or not in excess of forty-eight hours had passed between the incident and when the swabs were taken from C.R., whether C.R. had taken multiple baths before being swabbed or if C.R. had changed clothes before being swabbed. Rash further conceded that the absence of DNA on the sample did not indicate one way or the other whether the defendant actually did what he was accused of doing.

John Maya was also employed at LSPCL as a serologist. Mr. Maya testified that as a serologist, he examines evidence for the presence of biological substances. He testified no seminal fluids were detected on the bed sheet samples submitted for review. He conceded that he knew nothing about the facts of the case, including whether or not the bed sheet was present in a situation where seminal fluid could have been left on it.

**SUFFICIENCY OF THE EVIDENCE**

In his first assignment of error, the defendant argues the evidence presented was insufficient to support the verdict beyond a reasonable doubt. He argues the State failed to present evidence of "penile penetration." He notes, "[w]hile

5

[C.R.'s] statement and testimony indicated that [the defendant] penetrated her with his 'private' or his 'thing,' she at no time observed [the defendant's] penis, nor described it in any way, nor testified that it was erect."

A conviction based on insufficient evidence cannot stand, as it violates due process. See U.S. Const. amend. XIV, La. Const. art. I, § 2. In reviewing claims challenging the sufficiency of the evidence, an appellate court must determine whether any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt based on the entirety of the evidence, viewed in the light most favorable to the prosecution. See Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Oliphant, 2013-2973 (La. 2/21/14), 133 So. 3d 1255, 1258-59 (per curiam); see also La. C.Cr.P. art. 821(B); State v. Mussall, 523 So. 2d 1305, 1308-09 (La. 1988). State v. Livous, 2018-0016 (La. App. 1st Cir. 9/24/18), 259 So. 3d 1036, 1039-40, writ denied, 2018-1788 (La. 4/15/19), 267 So. 3d 1130. When circumstantial evidence forms the basis of the conviction, the evidence, "assuming every fact to be proved that the evidence tends to prove ... must exclude every reasonable hypothesis of innocence." La. R.S. 15:438; Oliphant, 133 So. 3d at 1258; Livous, 259 So. 3d at 1040.

The due process standard does not require the reviewing court to determine whether it believes the witnesses or whether it believes the evidence establishes guilt beyond a reasonable doubt. State v. Mire, 2014-2295 (La. 1/27/16), 269 So. 3d 698, 703 (per curiam). Rather, appellate review is limited to determining whether the facts established by the direct evidence and inferred from the circumstances established by that evidence are sufficient for any rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Gardner, 2016-0192 (La. App. 1st Cir. 9/19/16), 204 So. 3d 265, 267. The weight given evidence is not subject to

6

appellate review; therefore, an appellate court will not reweigh evidence to overturn a factfinder's determination of guilt. Livous, 259 So. 3d at 1040.

At the time of the offense, La. R.S. 14:41, in pertinent part, provided, as follows:[4]

> A. Rape is the act of anal ... sexual intercourse with a ... female person committed without the person's lawful consent.
>
> B. Emission is not necessary, and any sexual penetration, when the rape involves ... anal intercourse, however slight, is sufficient to complete the crime.

La. R.S. 14:43, in pertinent part, provides:

> A. Third degree rape is a rape committed when the anal ... sexual intercourse is deemed to be without the lawful consent of a victim because it is committed under any one or more of the following circumstances:
>
> . . .
>
> (4) When the offender acts without the consent of the victim.

A rational trier of fact, viewing the evidence presented in this case in the light most favorable to the State, could find the evidence proved beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, all of the elements of third degree rape and the defendant's identity as the perpetrator of that offense against C.R. The State was required to prove beyond a reasonable doubt the essential element of sexual penetration, however slight. La. R.S. 14:41(B); State v. Robertson, 454 So. 2d 205, 208 (La. App. 1st Cir.), writ denied, 458 So. 2d 487 (La. 1984). The evidence submitted to the jury, which included C.R.'s testimony that the defendant forced himself "on [C.R.] and in [C.R.]" and that he put his "private part in [her] butt," was sufficient to prove the element of anal sexual intercourse because it indicated the defendant put his penis *inside* the anus of C.R.

---

[4]Louisiana Revised Statute 14:41 was subsequently amended by La. Acts 2022, No. 173, §1, effective August 1, 2022.

Based on C.R.'s testimony and her description of the physical contact between her and the defendant, the jury, based on their common knowledge and understanding of the human anatomy, male and female, could rationally conclude that there was anal penetration. The evidence was sufficient to support the finding of sexual penetration beyond a reasonable doubt. See Robertson, 454 So. 2d at 208-09.

The testimony of the victim alone is sufficient to prove the elements of the offense. The trier of fact may accept or reject, in whole or in part, the testimony of any witness. State v. Johnson, 2013-0372 (La. App. 1st Cir. 12/27/13), 2013 WL 6858334, *3, writ denied, 2014-0254 (La. 11/26/14), 152 So. 3d 895. Further, in reviewing the evidence, we cannot say that the fact finder's determination was irrational under the facts and circumstances presented. See State v. Ordodi, 2006-0207 (La. 11/29/06), 946 So. 2d 654, 662. An appellate court errs by substituting its appreciation of the evidence and credibility of witnesses for that of the fact finder and thereby overturning a verdict on the basis of an exculpatory hypothesis of innocence presented to, and rationally rejected by, the fact finder. See State v. Calloway, 2007-2306 (La. 1/21/09), 1 So. 3d 417, 418 (per curiam).

This assignment of error is without merit.

## EXCESSIVE SENTENCE

In his final assignment of error, the defendant contends the trial court imposed an excessive sentence. He argues, "[t]he trial court made no mention of the youthful [defendant's] potential for rehabilitation, no mention of whether or not recidivism was likely, and redundantly referenced that the felony criminal sexual offense involved an egregious sex act." In his motion for reconsideration of sentence, the defendant argued the sentence was "constitutionally excessive and in violation of the Eighth Amendment prohibition on cruel and unusual punishment."

8

Article I, Section 20 of the Louisiana Constitution prohibits the imposition of excessive punishment. Although a sentence may be within statutory limits, it may violate a defendant's constitutional right against excessive punishment and is subject to appellate review. State v. Sepulvado, 367 So. 2d 762, 767 (La. 1979). A sentence is constitutionally excessive if it is grossly disproportionate to the severity of the offense or is nothing more than a purposeless and needless imposition of pain and suffering. State v. Trahan, 93-1116 (La. App. 1st Cir. 5/20/94), 637 So. 2d 694, 708. A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. A trial court is given wide discretion in the imposition of sentences within statutory limits, and the sentence imposed by it should not be set aside as excessive in the absence of manifest abuse of discretion. State v. Currie, 2020-0467 (La. App. 1st Cir. 2/22/21), 321 So. 3d 978, 984.

The Louisiana Code of Criminal Procedure sets forth items that must be considered by the trial court before imposing sentence. See La. C.Cr.P. art. 894.1. The trial court need not recite the entire checklist of Article 894.1, but the record must reflect that it adequately considered the guidelines. In light of the criteria expressed by Article 894.1, a review for individual excessiveness should consider the circumstances of the crime and the trial court's stated reasons and factual basis for its sentencing decision. Currie, 321 So. 3d at 984.

Whoever commits the crime of third degree rape shall be imprisoned at hard labor, without benefit of parole, probation, or suspension of sentence, for not more than twenty-five years. La. R.S. 14:43(B). Pursuant to the Habitual Offender Law, the defendant's sentencing exposure as a second offender was not less than one-third the longest term (8 years and 4 months) and not more than twice the longest term (50 years) prescribed for a first conviction. La. R.S. 15:529.1(A)(1). The

9

defendant was sentenced to twenty-five years at hard labor without benefit of probation, parole, or suspension of sentence.

The trial court issued written reasons for its adjudication of the defendant as a second habitual offender. The court noted therein that:

> In determining the length of the sentence to be imposed, this Court considered, in addition to the sentencing guidelines, the following factors:
>
> 1. The Defendant's instant conviction of Third Degree Rape upon a victim who was 13 years [old] at the time of the commission of the crime;
>
> 2. The age difference between the Defendant (24) and the victim (13) at the time of the crime; [5]
>
> 3. The blood relation between the offender and the victim;
>
> 4. The closeness in time between the Defendant's 1st conviction and the rape offense of 2019;
>
> 5. The egregious sexual acts committed by the Defendant upon an otherwise vulnerable 13 year [old] cousin.

The court read those reasons at the sentencing hearing.

A thorough review of the record reveals the trial court adequately considered the criteria of Article 894.1 and did not manifestly abuse its discretion in imposing the sentence herein. While the court did not specifically mention the defendant's "potential for rehabilitation," or "whether or not recidivism was likely," a sufficient factual basis for the sentence is shown. See Currie, 321 So. 3d at 984-85 ("[r]emand for full compliance with Article 894.1 is unnecessary when a sufficient factual basis for the sentence is shown."). Further, there was nothing "redundant" in the court considering the sexual acts the defendant committed upon his young cousin because the trial court was required to consider that information under the sentencing guidelines. See Currie, 321 So. 3d at 984; see La. C.Cr.P. art. 894.1(A)(3) ("[a] lesser sentence will deprecate the seriousness of the defendant's crime"), La. C.Cr.P. art. 894.1(B)(1) ("[t]he offender's conduct during the

---

[5]The defendant's date of birth is March 5, 1995. Thus, he was twenty-three years of age at the time of the offense herein.

10

commission of the offense manifested deliberate cruelty to the victim"), La. C.Cr.P. art. 894.1(B)(2) ("[t]he offender knew or should have known that the victim of the offense was particularly vulnerable or incapable of resistance due to extreme youth... .") and La. C.Cr.P. art. 894.1(B)(21) ("[a]ny other relevant aggravating circumstances"). The sentence imposed was not grossly disproportionate to the severity of the offense, and thus, was not unconstitutionally excessive.

As such, we find no merit to this assignment of error.

## CONCLUSION

For the above and foregoing reasons, we affirm the defendant's conviction, habitual offender adjudication, and sentence.

**CONVICTION, HABITUAL OFFENDER ADJUDICATION, AND SENTENCE AFFIRMED.**