## NOT DESIGNATED FOR PUBLICATION

## STATE OF LOUISIANA

## COURT OF APPEAL

## FIRST CIRCUIT

## 2022 KA 1047

## STATE OF LOUISIANA

## VERSUS

## CHANSE EVERETT MORTENSON

*DATE OF JUDGMENT:*    **APR 2 6 2023**

ON APPEAL FROM THE TWENTY-SECOND JUDICIAL DISTRICT COURT
PARISH OF ST. TAMMANY, STATE OF LOUISIANA
NUMBER 2486-2020, DIVISION J

HONORABLE ELLEN M. CREEL, JUDGE

\* \* \* \* \* \*

Warren L. Montgomery
District Attorney
Matthew Caplan
Assistant District Attorney
Covington, Louisiana

Counsel for Appellee
State of Louisiana


Walter R. Woodruff, Jr.
Metairie, Louisiana

Counsel for Defendant-Appellant
Chanse Everett Mortenson

\* \* \* \* \* \*

BEFORE: THERIOT, CHUTZ, AND HESTER, JJ.

*Disposition:* **CONVICTION AND SENTENCE AFFIRMED.**

**CHUTZ, J.**

The defendant, Chanse Everett Mortenson, was charged by bill of information with cruelty to juveniles, a violation of La. R.S. 14:93, and pled not guilty. Following a jury trial, he was found guilty of attempted cruelty to juveniles, a violation of La. R.S. 14:27 and La. R.S. 14:93, by unanimous verdict. He was sentenced to four years at hard labor, suspended, and three years on probation. The defendant now appeals, challenging the sufficiency of the evidence. For the following reasons, we affirm the conviction and sentence.

## FACTS

The victim, J.G.,[1] was born on January 7, 2005. In 2019, he was living with his mother and the defendant in the defendant's house. According to J.G.'s testimony, in May 2019, he was forced to sleep outside for multiple days with no tent, blanket, or mattress as punishment for being disrespectful. He did not bathe or change clothes while outside, and the only food he had was either given to him or thrown on the ground for him by his mother or the defendant. The defendant accused J.G. of being disrespectful and disobedient because J.G.'s eyes "dart[ed] around," when J.G. looked at the defendant. J.G. indicated he was told to apologize or leave the house, and although he apologized, he was still forced to leave the house. J.G. testified his punishment was "terrible" and was "all [he] thought about." He was subsequently hospitalized for suicidal ideations and prescribed Lexapro.[2]

In October 2019, the defendant punished J.G. for fourteen days because he was disrespectful and told his father about the defendant's actions. At the beginning of that punishment J.G. was allowed to sleep on the floor inside, but he was later forced to again sleep outside. On the thirteenth day of the punishment, the defendant

---

[1] The victim is referenced herein only by his initials. See La. R.S. 46:1844(W).

[2] Escitalopram, sold as Lexapro, is a selective serotonin reuptake inhibitor used to treat depression and generalized anxiety disorder.

2

forced J.G. to "work the floor" with a rag and a bucket of water. After J.G. completed the work, the defendant made him repeat the task. While J.G. was cleaning the floor, the defendant struck him with an open hand "too many [times] to count," bruising J.G.'s eye and bloodying his nose.[3] After J.G. reported the incident to his father, he was again forced to sleep outside. During that time, he was not allowed into the house to use the bathroom and instead urinated in the woods and defecated at school.

On October 30, 2019, St. Tammany Parish Sheriff's Office Detective Angelica Lopez visited J.G. at the defendant's house. Detective Lopez and child protective investigators spent approximately three hours outside the residence, waiting for J.G.'s mother to return from work. Although it was cold and raining, J.G., who was fourteen years old, was also outside wearing shorts. J.G. had no protection from the mosquitos and was actively scratching mosquito bites on his legs. The defendant repeatedly told J.G. he could only go inside if he apologized for his actions. J.G. remained outside throughout the time authorities were present and even after his mother returned. Later that night, authorities removed J.G. from the home.

Alice Broussard, a guidance counselor at Covington High school, first counseled J.G. at the end of September 2019. He was fourteen years old at the time and was upset because of his relationship with his mother and her boyfriend. J.G. told Broussard that his mother and the defendant removed his bed and everything else from his bedroom except for a pillow and a blanket. In October 2019, J.G. reported conditions had worsened, stating that the defendant had hit him four times and made his nose bleed. Broussard saw bruises under J.G.'s left eye. J.G. also told Broussard he was being forced to sleep outside and that the only method of bathing

---

[3] In a recorded pretrial interview, J.G. stated the defendant struck him "like five times."

3

available to him was to use the garden hose. He stated his mother had made the car available for him to sleep in, but he was not allowed to sleep in the house. He also told Broussard that he was given different food than everyone else and was not allowed to eat dinner with the family.

Dr. Neha Mehta examined J.G. on November 12, 2019. She diagnosed child physical abuse on the basis of J.G. reporting that he was hit in the head, and the blow caused a nosebleed and left a mark. Dr. Mehta also diagnosed child neglect on the basis of J.G. being denied available resources, including food, shelter, heat, sleeping conditions, and basic hygiene to J.G. Dr. Mehta noted J.G. reported punching himself in the head and wanting to kill himself after spending two days sleeping on the grass with bugs and ants and without food or water. Additionally, Dr. Mehta diagnosed emotional abuse on the basis of isolation, spurning, and lack of self-worth as a result of feeling unwanted. In Dr. Mehta's opinion, striking a child in the head was unreasonable discipline because of the risk of significant injury to the child's eyes, teeth, and brain.

The defendant testified that J.G. was not his biological child, his stepchild, or his adopted child, but that he was dating J.G.'s mother. When asked about J.G.'s disobedience or disrespect requiring discipline, the defendant stated J.G. did not speak to his mother very nicely and frequently remained silent. The defendant also claimed J.G. would do his chores "halfway and not all the way." According to the defendant, he and J.G.'s mother disciplined J.G. by taking away his cell phone, TV privileges, movie theater privileges, and pool privileges. The defendant stated, "pretty soon, [J.G.] had everything taken away from him, including his toothbrush and his bed."

According to the defendant, the incident in May occurred after J.G. cussed at his mother and she decided he could stay outside in a chair on the screened-in porch. The defendant claimed J.G. spent only one night on the porch and was provided with

a blanket and a towel to use as a pillow. The defendant denied making J.G. sleep on the grass. He also claimed J.G. was given chips, sandwiches, and bottled water. According to the defendant, J.G. kicked the screen porch door and punched the window, but pulled his punches "because he didn't want to get cut." The defendant did not deny that J.G. was taken to the hospital the next day when he said he was going to hurt himself.

In regard to corporal punishment, the defendant stated he had slapped J.G. on two occasions. The first occasion was when J.G. "stepp[ed] forward" toward his mother. The second occasion was when J.G. "stepp[ed] forward" toward the defendant. In regard to this incident, the defendant claimed he warned J.G. several times and backed up twice before slapping him. The defendant stated on another occasion J.G. "chested up" to him in the middle of the driveway. The defendant claimed J.G. swung at him, and he moved his head out of the way before taking J.G. down to the ground without hitting him or slapping him. According to the defendant, J.G. was the aggressor in the incidents and his "chest was puffed up and his fists were doubled." However, the defendant admitted that when he saw J.G. was angry, he told the fourteen-year-old boy: "You want to hit me, don't you[?] ... "Well you go right ahead. See how that works out for you." The defendant denied acting with any intention to be cruel or to mistreat J.G.

In regard to the October incident, the defendant claimed J.G. falsely reported to his father that the defendant had hit him four or five times and bloodied his nose. The defendant denied striking J.G. during the incident, stating instead that his finger accidentally went into J.G.'s nose while he was trying to draw J.G.'s attention to the parts of the floor he had missed while cleaning. The defendant stated he told J.G. either to tell the truth and apologize for getting his mother yelled at and threatened by his father, or to leave the house. The defendant stated that J.G. walked to the unscreened front porch and remained there for approximately three hours. The

5

defendant claimed J.G. then repeatedly refused his mother's offers to come back inside, and she eventually gave him a blanket and a pillow and opened the car for him.

## SUFFICIENCY OF THE EVIDENCE

In his sole assignment of error, the defendant argues the State failed to adduce evidence sufficient to prove beyond all reasonable doubt that he intentionally committed the offense of attempted cruelty to juveniles. He argues the record is devoid of any evidence that his completed actions caused the victim any unjustifiable pain or suffering and, without sufficient evidence of this essential and necessary element, his conviction cannot stand.

A conviction based on insufficient evidence cannot stand, as it violates due process. See U.S. Const. amend. XIV, La. Const. art. I, § 2. In reviewing claims challenging the sufficiency of the evidence, an appellate court must determine whether any rational trier-of-fact could have found the essential elements of the crime proven beyond a reasonable doubt based on the entirety of the evidence, both admissible and inadmissible, viewed in the light most favorable to the prosecution. See **Jackson v. Virginia**, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); **State v. Oliphant**, 2013-2973 (La. 2/21/14), 133 So.3d 1255, 1258-59 (per curiam); see also La. Code Crim. P. art. 821(B); **State v. Mussall**, 523 So.2d 1305, 1308-09 (La. 1988). **State v. Livous**, 2018-0016 (La. App. 1st Cir. 9/24/18), 259 So.3d 1036, 1039-40, writ denied, 2018-1788 (La. 4/15/19), 267 So.3d 1130. When circumstantial evidence forms the basis of the conviction, the evidence, "assuming every fact to be proved that the evidence tends to prove . . . must exclude every reasonable hypothesis of innocence." La. R.S. 15:438; **Oliphant**, 133 So.3d at 1258; **Livous**, 259 So.3d at 1040.

The due process standard does not require the reviewing court to determine whether it believes the witnesses or whether it believes the evidence establishes guilt beyond a reasonable doubt. **State v. Mire**, 2014-2295 (La. 1/27/16), 269 So. 3d 698,

6

703 (per curiam). Rather, appellate review is limited to determining whether the facts established by the direct evidence and inferred from the circumstances established by that evidence are sufficient for any rational trier-of-fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. **State v. Gardner**, 2016-0192 (La. App. 1st Cir. 9/19/16), 204 So.3d 265, 267.

In this case, the defendant was charged with cruelty to a juvenile, but the jury returned a verdict of guilty of attempted cruelty to a juvenile. The offense of cruelty to juveniles includes the "intentional or criminally negligent" mistreatment or neglect by anyone 17 years of age or older of any child under the age of 17 whereby unjustifiable pain or suffering is caused to the child. La. R.S. 14:93(A)(1). Thus, cruelty to a juvenile can be committed either when a person has general intent to or is criminally negligent in mistreating or neglecting the child, regardless of whether the person had an intent to cause the child unjustifiable pain and suffering. See **State v. Barnett**, 521 So.2d 663, 665 (La. App. 1st Cir. 1988). In contrast, a person may be found guilty of attempted cruelty to a juvenile under La. R.S. 14:27(A) only if, "having a specific intent" to commit the offense, he does or omits an act for the purpose of and tending directly toward the accomplishing of his object. Thus, while general intent or criminal negligence is sufficient for the commission of cruelty to a juvenile, specific intent is an essential element for the commission of attempted cruelty to a juvenile.[4] La. R.S. 14:27(A); La. R.S. 14:93.

---

[4] La. R.S. 14:10(2) defines general criminal intent as follows:

> General criminal intent is present whenever there is specific intent, and also when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act.

Specific criminal intent is that "state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." La. R.S. 14:10(1). Though intent is a question of fact, it need not be proven as a fact. It may be inferred from the circumstances of the transaction. Specific intent may be proven by direct evidence, such as statements by a defendant, or by inference from circumstantial evidence, such as a defendant's actions or facts depicting the circumstances. Specific intent is an ultimate legal conclusion to be resolved by the factfinder. **State v. Coleman**, 2021-0870 (La. App. 1st Cir.

7

The defendant's testimony presented a version of events in which he denied any wrongdoing and offered as a hypothesis of innocence that he acted to reasonably discipline J.G. Citing La. R.S. 14:18(4), he contends on appeal that a defendant's conduct is justifiable, although otherwise criminal, when the defendant's conduct consists of reasonable discipline of a minor by a parent. La. R.S. 14:18(4). Viewed in the context of the cruelty to juveniles statute, La. R.S. 14:93, "unjustifiable pain and suffering" are words of limitation. In a parent's case, the application of the statute is limited to mistreatment causing pain and suffering exceeding the bounds of reasonable discipline. See **State v. Comeaux**, 319 So.2d 897, 899 (La. 1975); **Barnett**, 521 So.2d at 666.

We express no opinion on whether La. R.S. 14:18(4) is applicable under the circumstances herein, where the defendant is not the minor's parent but the minor and his mother, the defendant's girlfriend, are living in the defendant's home and the defendant may have acted with the mother's consent. Regardless, the jury observed the defendant's appearance and demeanor during his testimony, and its verdict indicates it did not find his claim that his conduct was merely reasonable disciplining of J.G. to be credible. The jury obviously rejected this testimony. A determination of the weight to be given evidence is a question of fact for the trier-of-fact and is not subject to appellate review. **State v. Morrison**, 582 So.2d 295, 303 (La. App. 1st Cir. 1991).

A review of the record reveals any rational trier-of-fact, viewing the evidence in the light most favorable to the State, could have concluded beyond a reasonable doubt that the defendant acted with the specific intent to mistreat or abuse[5] J.G. to an extent sufficient to result in unreasonable pain and suffering and performed acts

---

4/8/22), 342 So.3d 7, 12.

[5] As used La. R.S. 14:93, "mistreatment" is equated with abuse. *State v. Booker*, 2002-1269 (La. App. 1st Cir. 2/14/03), 839 So.2d 455, 459, writ denied, 2003-1145 (La. 10/31/03), 857 So.2d 476.

in furtherance of that intent. In May 2019, the defendant forced J.G. to remain outside, sleeping on the grass, for multiple days. According to J.G.'s testimony, while he was given some food during this time, he was deprived of adequate food. The defendant's own testimony established that the May 2019 "discipline" of J.G. resulted in J.G. threatening to harm himself, ultimately leading to his hospitalization for suicidal ideations and being prescribed anti-depressant medication. Further, the defendant admitted that shortly thereafter, he and J.G.'s mother had a discussion with someone from the Department of Family Services, who advised them that J.G. should not be left outside except for a cooling-off period no longer than three hours.

Nevertheless, despite being aware of the deleterious effect being forced to stay outside in May had on J.G., the defendant again banished J.G. from his home in October 2019, after first making him sleep on the floor for several nights. The defendant forced J.G. to remain outside exposed to cold weather, rain, and biting insects for days. During this time, J.G. was not allowed to use the facilities in the house for any purpose, including to relieve himself or for hygiene purposes. J.G. resorted to using a hose pipe to wash himself.

When a case involves circumstantial evidence and the trier-of-fact reasonably rejects the hypothesis of innocence presented by the defendant's own testimony, that hypothesis falls, and the defendant is guilty unless there is another hypothesis that raises a reasonable doubt. **Morrison**, 582 So.2d at 303. Based on its credibility determinations, the jury rejected the defendant's claim that, rather than mistreating or abusing J.G., he was reasonably disciplining J.G. and teaching him to apologize. The defendant's testimony was directly contrary to J.G.'s testimony regarding the mistreatment he was subjected to and the fact that he did apologize but was still not permitted inside the house. Once the jury rejected the defendant's reasonable discipline defense, there was no other hypothesis of innocence raising a reasonable doubt as to the defendant's guilt. The defendant's conduct evidenced his active

9

desire to mistreat and abuse J.G. to an extent causing unjustifiable pain and suffering and supports the verdict returned by the jury. See **State v. Freeman**, 409 So.2d 581, 587 (La.), cert. denied, 459 U.S. 845, 103 S.Ct. 100, 74 L.Ed.2d 90 (1982) (jury properly charged with attempted cruelty to a juvenile on the basis of evidence the defendant intentionally mistreated the juvenile).

This court will not assess the credibility of witnesses or reweigh the evidence to overturn a factfinder's determination of guilt. The testimony of the victim alone is sufficient to prove the elements of the offense. The trier-of-fact may accept or reject, in whole or in part, the testimony of any witness. **State v. Johnson**, 2013-0372 (La. App. 1st Cir. 12/27/13), 2013 WL 6858334, *3 (unpublished), writ denied, 2014-0254 (La. 11/26/14), 152 So.3d 895. Further, in reviewing the evidence, we cannot say the factfinder's determination was irrational under the facts and circumstances presented. See **State v. Ordodi**, 2006-0207 (La. 11/29/06), 946 So.2d 654, 662. An appellate court errs by substituting its appreciation of the evidence and credibility of witnesses for that of the factfinder and thereby overturning a verdict on the basis of an exculpatory hypothesis of innocence presented to, and rationally rejected by, the factfinder. See **State v. Calloway**, 2007-2306 (La. 1/21/09), 1 So.3d 417, 418 (per curiam).

This assignment of error is without merit.

**CONVICTION AND SENTENCE AFFIRMED.**

10